**Mrs. Carmen PFISTER, Appellant (Complainant below),**

v.

**NIOBRARA COUNTY, Appellee (Respondent below).**

**No. 4622.**

Supreme Court of Wyoming.

Dec. 9, 1976.

Linden E. Whitchurch, Cheyenne, signed the brief and appeared in oral argument for appellant.

William A. Taylor, Lusk, signed the brief and appeared in oral argument for appellee.

V. Frank Mendicino, Atty. Gen., and Eric A. Distad, Special Asst. Atty. Gen., Cheyenne, filed an amicus curiae brief for Wyoming Fair Employment Commission.

Before GUTHRIE, C. J., and Mc-CLINTOCK, RAPER, THOMAS and ROSE, JJ.

RAPER, Justice.

The sheriff of Niobrara County appointed a male his deputy from applicants, including a woman, appellant-complainant. The complainant contends she was discriminated against because of her sex, so filed a complaint to that effect with the Wyoming Fair Employment Commission. Niobrara County became the respondent and is here as appellee. The Commission, after hearing, found discrimination and awarded complainant $2,508.30 as a "fair and reasonable amount for recovery." On review by the district court, the Commission was reversed. In this appeal by the complainant, we will agree with the district court's result.

After agreeing with the Commission that the complainant had been discriminated against, the district court entered the following pertinent and controlling conclusion:

"5. That the Sheriff of Niobrara County is the employer of deputy sheriffs and is an independent public officer not under the control of the Niobrara County Commissioners, other than in matters of budgeting and the approval of such deputy or deputies whose names are submit-

ted to the Board of County Commissioners by the Sheriff, which approval shall not be unreasonably withheld by said County Commissioners."[1]

In the order that we will consider them, the litigants have raised the following questions:

1. Is a deputy sheriff an officer or employee?

2. Does the Wyoming Fair Employment Practices Act of 1965 apply to an elected sheriff and his deputy or to either?

3. If an employee, is a deputy sheriff employed by the sheriff or by the county?

4. Can the Fair Employment Commission make an award of money damages to a person it finds discriminated against?

5. Was there sex discrimination?

In 1965, the Wyoming State Legislature enacted what is cited as the Wyoming Fair Employment Practices Act. Section 27–257 et seq., W.S.1957, C.1967.[2] The act created a Commission to receive, investigate, conduct hearings and pass upon complaints. Appeals to the District Court and this Court by aggrieved parties are allowed. It is provided by § 27–261, W.S. 1957, C.1967, that:

"It shall be a discriminatory or unfair employment practice:

"(1) For an employer to refuse to hire, to discharge, to promote or demote, or to discriminate in matters of compensation against, any person otherwise qualified, because of sex, race, creed, color, national origin or ancestry.

"(2) For a person, an employment agency, a labor organization, or the employees or members thereof, to discriminate in matters of employment or mem-

---

1. Other conclusions related to the issues raised by complainant and respondent are:
 "4. That the Wyoming Fair Employment Practices Commission exceeded their jurisdictional authority in awarding a money judgment to the Complainant.
 \* \* \* \* \*
 "6. That the Sheriff of Niobrara County is not subject to the provisions of the Wyoming

Fair Employment Practices Commission Act of 1965, in that the Sheriff's Office in Niobrara County, Wyoming employs only one deputy."

2. The only amendment since has been to increase the size of the Commission from three to five members.

bership against any person, otherwise qualified, because of sex, race, creed, color, national origin or ancestry."

The sheriff of a county is an elected officer.[3] By the provisions of § 18–173, W.S.1957, as amended:

"(a) The sheriff of each county may appoint an undersheriff who shall be a bona fide resident of such county and who shall qualify as required by law for deputy sheriff, and who shall serve as sheriff in case of death, resignation or other disability of the sheriff until such time as the board of county commissioners shall fill such vacancy, and the person so appointed shall have qualified in accordance with law. Such undersheriff so appointed may receive an annual salary not to exceed ninety-five percent (95%) of the annual salary of the sheriff in their respective counties.

"(b) The sheriff of each county may, by and with the consent of the board of county commissioners of the respective counties, appoint one or more deputies who may receive an annual salary, fixed by the board of county commissioners not to exceed ninety percent (90%) of such sheriff's salary, and may also appoint such other clerks, stenographers and assistants as may be necessary to properly administer the affairs of the office."

From the applicants and acting under authority of the foregoing statute, the elected sheriff of Niobrara County submitted only the name of his choice for a deputy to the Board of County Commissioners and the consent was forthcoming without question. We note that the sheriff did not appoint an undersheriff and apparently does not have one. The record discloses that the sheriff has a full-time two-person office—himself and one deputy.

Niobrara County is one of the least populated Wyoming counties, rural in character. In the year previous to the hearing before the Wyoming Fair Employment Commission, the sheriff had only from time to time 36 prisoners in his jail. He indicated that his clerical work takes only about 30 minutes per month. The sheriff and his wife have an apartment in the jail building and he is also the jailer. His wife has a deputy's commission but her work is only occasional; she helps out in the handling of female and juvenile prisoners and patients for the Wyoming State Hospital and transporting them, for which she receives very little by way of reimbursement, other than expenses; she gets no salary. The sheriff has no radio in his offices but uses the facilities of the State Department of Revenue at its port of entry, located at Lusk. He has several unpaid deputies, on call for emergencies.

The sheriff appointed the man he selected for a deputy because "he was the sort of individual I was looking for," even though lacking in law enforcement experience. The reasons given by the sheriff for not employing the complainant were that "he could not justify hiring a woman"; "what would you think if I came in the middle of the night and picked up your wife to go patrolling in the boondocks?"; "could not justify hiring a woman because of what the people in the county might think"; "it would just not work for a woman to be on the force"; "his wife wouldn't like it"; "the citizens of Niobrara County would consider it improper to patrol with a woman at night in the country and he would not consider it"; "it being a small department I wasn't sure it [hiring of a female] was a feasible thing"; "I use my own standards this being a two-man department and having my wife as matron and deputy, there is no vacancy for another woman in the department." The sheriff also indicated that he had a little difficulty with the complainant and her husband over a tax collection against them. The complainant had experience as a clerk and radio operator in a police department in South Dakota but had not

3. Section 18–172, W.S.1957.

worked the street, had not carried a gun and made only arrests in police headquarters, as required.

The County Commissioners did not participate in the selection of the sheriff's deputy. The sheriff did not submit the names of applicants to them at the time of appointment of his choice and they had no knowledge that the complainant had submitted an application to the sheriff; she submitted no application to them. The Board did not learn about it until sometime after appointment of the sheriff's preference for deputy. She did not even mention it at a meeting she had with the Board of County Commissioners on another matter regarding taxes. She later complained by letter to the Board, which communication was not answered. The first real knowledge of the Board of any problem was when contacted by an investigator of the Fair Employment Commission.

 The foregoing narration is of value only to present background showing the circumstances under which this case arose, because we are of the opinion that, as a matter of law, the Fair Employment Practices Act has no application to the appointment of a deputy sheriff. By its entire thrust, it is aimed at an employer-employee relationship. Its title so implies and its language so suggests in its use of such terms as "employees," "employing" and "hire." A deputy sheriff is an officer, not an employee; he is appointed, not hired. This will, of course, be more fully explained.

Annotation, 5 A.L.R.2d 415, entitled "Constitutional or statutory provision referring to 'employees' as including public officers," summarizes its coverage of the subject in the following language:

"While there are exceptions, and in a particular instance regard must be had to the phraseology and intention of the provision in question, the term 'employee,' or 'workman,' used in a constitutional, statutory, or charter provision in referring to those performing services for a state or political subdivision thereof, is seldom construed so as to include public officers unless the provision in question expressly so stipulates. * * *"

The Wyoming Fair Employment Practices Act nowhere mentions appointment of public officers.

The appointment of a deputy has constitutional roots. Section 3, Article XIV, Wyoming Constitution, provides that:

"The legislature shall by law designate county offices and shall, from time to time, fix the salaries of county officers, which shall in all cases be in proportion to the value of the services rendered and the duties performed."

Section 4, Article XIV, Wyoming Constitution, provides that:

"The legislature shall provide by general law for such deputies as the public necessities may require, and shall fix their compensation."

Section 5, Article XIV, Wyoming Constitution, provides that:

"Any county *officers* performing the duties usually performed by the *officers* named in this article shall be considered as referred to by section 3 of this article, regardless of the title by which their offices may hereafter be designated." (Emphasis added.)

Acting with that trilogy of authority, the Legislature has provided for the designation of deputy sheriffs. Section 18–173, supra. It is provided by § 18–87, W.S. 1957, that:

"All deputy county *officers* shall have the same power and authority as their principal, and all official acts performed by them shall have the same force and effect as if done by their principal. All *officers* appointing deputies and assistants may require from them bond for their own protection, in such sum as they may see fit." (Emphasis added.)

The preceding § 18–86, W.S.1957, mandates that:

"All county *officers* shall be resonsible [responsible] for the acts of their deputies and assistants, and shall be holden

on their official bonds therefor." (Emphasis added.)

The citation of the preceding constitutional and statutory provisions forms a setting under which much law has been formulated by the courts. There is literally a wealth of cases in which a public officer has been distinguished from a public employee.[4] While they may exist, we have been unable to find any case or cases in the civil rights field in which any attempt has been made to impose any equal employment rights statute upon an elective officer in his choice of a deputy. Nor has either of the litigants or amicus here cited us to any such case. The complainant and amicus have referred to several federal cases construing the Federal Equal Employment Opportunity Act, 42 U.S.C.A., § 2000e et seq., but they all deal with discrimination in employee selection and none relate to the appointment of a deputy to an elected official. As a matter of fact, no one, either by oversight or otherwise, has pointed out that the federal act recognizes that there is an excepted area. We refer to 42 U.S.C.A., § 2000e(f), as follows:

> "The term 'employee' means an individual employed by an employer, except that the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be

on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision."

The Congress was no doubt concerned about the President of the United States in the selection of his cabinet and department heads, a Governor in his appointment of state division chiefs and down the political ladder to the county, which is a political subdivision specifically mentioned in the federal legislation.[5] We would suggest but avoid any holding as outside our jurisdiction and unnecessary, that a deputy sheriff can be considered within the ambit of the federal act, not only as a member of the personal staff of the sheriff but he is on a policy making level in that he has the same authority and duties as the sheriff under the Wyoming statutory structure.

A case we find rather frequently cited in the officer versus employee arena is *Blackburn v. Brorein*, Fla.1954, 70 So.2d 293. The stated purpose of that suit was to obtain a judicial determination as to the status of deputy sheriffs, and particularly whether or not they were employees or officers and if employees, whether they were

---

. 4. See West's Words and Phrases for definitions of "officer," "employee," "deputy" and variations adding prefixes and suffixes to those words.

5. We have dug out the regulations passed and adopted by the Wyoming Fair Employment Commission under its authority to do so found in § 27–260(2). It attempts a definition in § 2, of "employee" as follows:
 "d. 'Employee' shall mean any person who works for and receives compensation in this State. Compensation may be in the form of wages, salary, commissions, bonuses, fringe benefits, or the like, or goods or services in lieu of money."
It makes no reference to elective officials and their deputies and deals strictly with an employer-employee concept.

The Fair Employment Commission has as one of its members the State Commissioner of Labor and Statistics, § 27–259, as amended. By way of illustration only and we attempt no holding in that regard, it is suggested that the federal act prohibits any interference on the grounds of discrimination with the Governor's appointment of the State Commissioner of Labor and Statistics, an officer on the policy making level to serve at the Governor's pleasure. Section 27–11, W.S.1957, as amended. It is impossible to divorce the political nature of our form of government from constitutional and statutory guarantees against discrimination. They must live together.

employees of the sheriff or employees of the county. The particular question involved in the case was whether or not the appointment of deputy sheriffs was subject to the State's Civil Service Act. In Florida was a statutory section creating a set-up similar to ours, as follows:

"Sheriffs may appoint deputies to act under them who shall have the same power as the sheriff appointing them, and for the neglect and default of whom in the execution of their office the sheriff shall be responsible."

The factual situation in *Blackburn* was that the elected sheriff of one of Florida's counties was confronted with a civil service law under which the demand was made that he must select his deputies from a list of former deputies having civil service status, submitted to him by a civil service board. The sheriff contended that a choice of a deputy was solely his. The court agreed and held that the civil service law applied to public employees but not to deputy sheriffs because the latter are state officers. The Florida Supreme Court explained the reason for the State constitutional and statutory provisions with reference to sheriffs and deputy sheriffs to be that the scheme of government was to place responsibility upon a particular officer or class of officers. It is considered essential to law enforcement in the various counties to place responsibility for that activity upon the sheriff and he alone appoints his deputies and is responsible for them. The Florida court opined that it was never contemplated that the sheriffs of the state must perform the powers and duties vested in them through deputies selected by someone else; the sheriff should not be given the excuse that he was unable to select his own deputies and for that reason be unable to perform his duties. The court acknowledged the useful purpose of civil service laws but pointed out their conflict with organic law giving a piece of the state's sovereign powers to particular individuals, citing with approval from Florida precedent that the term "office"

implies a delegation of a portion of the sovereign power to, and possession of it by, the person filling the office. According to that court's opinion, a public office is an agency for the state, and the person whose duty it is to perform the agency is a public officer in whom has been placed specifically a public trust in the enforcement of the laws of the state, a part of the sovereign power. The court concluded that a deputy is not an employee of either the sheriff or the county.

Much of the applicable law, pinpointed at the very issue we have before us, involves workmen's compensation statutes, intimately dealing with employer-employee relationship. In *County of Winnebago v. Industrial Commission*, 1968, 39 Ill.2d 260, 234 N.E.2d 781, the court was called upon to decide whether or not a deputy sheriff was an official or an employee. Under the statutes of Illinois the sheriff may appoint one or more deputies, not exceeding the number allowed by rule of court, and may take a bond from the deputy for his indemnity. The law of Illinois also provides that a deputy sheriff is authorized to perform any and all duties of the sheriff and provides that the acts of the deputy are the acts of the sheriff; the statutes also provide that the sheriff is liable for any neglect or omission of the duties of office occasioned by a deputy as he would be for his own personal neglect or omission. It was pointed out that a sheriff and the deputy sheriff are one and the same person as far as their duties are concerned and the acts of the deputy are the acts of the sheriff. Accordingly, the relationship of sheriff and deputy was not considered to be an employment nor master-servant relationship. The court concluded that a deputy sheriff is not an employee but an officer.

A deputy sheriff holds an appointment which is distinguishable from an employment. *State ex rel. Geyer v. Griffin*, 1947, 80 Ohio App. 447, 76 N.E.2d 294. In that case, it was also held that even though the appointment of a deputy sheriff was subject to approval by the common pleas

judge of the county, the absolute discretion of appointment rested with the sheriff and the approving judge could place no restraints on duties to be performed by deputies. The county judge contended that the sheriff had represented that the deputy appointed would not actively serve but did. The county auditor had refused payment of compensation. Mandamus to compel payment was granted.

In *Mitchell v. James*, La.App.1966, 182 So.2d 144, without much fanfare, it was held that deputy sheriffs are public officers and not employees entitled to benefits under the provisions of the Workmen's Compensation Act. *Bowden v. Cumberland County*, 1924, 123 Me. 359, 123 A. 166, held that there is a manifest difference between the office of deputy sheriff and an employment:

> " * * * [I]t is well settled that an officer is distinguished from the employee in the greater importance, dignity, and independence of his position, in being required to take an official oath, and perhaps to give an official bond, in the more enduring tenure, and in fact that the duties of the position are precribed by law. " [6]

In *Hensley v. Holder*, 1957, 228 Ark. 401, 307 S.W.2d 794, in a suit to recover money paid to a deputy sheriff, the wife of the sheriff, because the Arkansas statute authorized only one deputy and her appointment would exceed that, the deputy raised the defense that she was not an officer but an employee. The court held that such a position was untenable and accepted a text definition of "deputy" as one authorized by an officer to exercise the office or right which the officer possesses, for and in place of the latter.

A deputy county assessor is not an employee but is an officer; an office is created by law and not by contract as in an employment. *Union Township of Montgomery County v. Hays*, 1965, 138 Ind.App. 280, 207 N.E.2d 223. A deputy district court clerk is a county officer and not a county employee; the mere payment of compensation is not sufficient to establish the employer-employee relationship, under the Workmen's Compensation Act. *Perea v. Board of Torrance County Commissioners*, 1967, 77 N.M. 543, 425 P.2d 308.

A deputy supervisor of the oil and gas department of the Railroad Commission is an officer of the state and not an employee. *Bigham v. State*, 1941, 141 Tex. Cr.R. 332, 148 S.W.2d 835. In *Bigham*, it was very well said:

> " * * * That one is called a deputy carries with it the fact that he is an alter ego for his superior, being charged with all the duties as well as the responsibilities of his superior, and empowered to perform the acts and discharge the duties of such superior, and to that extent becoming the superior officer himself in his superior's absence. If the superior be denominated an officer, then the deputy would also be such an officer."

A legislator dying of a heart attack caused by accident sustained in the course of and due to his duty as a legislator is a state officer and not an employee and therefore not entitled to workmen's compensation benefits. *Toomey v. New York State Legislature*, 1957, 2 N.Y.2d 446, 161 N.Y.S.2d 81, 141 N.E.2d 584. A clerk to a school board of trustees was held to be an employee and does not hold a public office because her position was not created by the Legislature, nor does she possess any delegated sovereign power and so, hence, was not entitled to hearing to determine cause for her removal. *State ex rel. Running v.*

---

**6.** Section 18–178, W.S.1957, prescribes the duties of sheriffs and their deputies:

"It shall be the duty of the sheriffs and deputy sheriffs to keep and preserve the peace in their respective counties, and to quiet and suppress all affrays, riots, and unlawful assemblies and insurrections, for which purpose and for the service of process in civil and criminal cases, and in apprehending and securing any person for felony or breach of the peace, they and every coroner and constable, may call to their aid such person or persons of their county as they may deem necessary."

*Jacobson*, 1962, 140 Mont. 221, 370 P.2d 483.[7]

While the value of the Fair Employment Practices Act is of great benefit in its intended scope, we hold that a deputy sheriff is a state officer and not an employee. While in very broad spectrum, state officers are in a sense in the employ of the state, they have not only traditionally distinctive positions but positions recognized as especially responsible by the state constitution and the statutes of the state. In *Meiland v. Cody*, 1960, 359 Mich. 78, 101 N.W.2d 336, the court in a case involving employment of a court stenographer, adopted a rule of measurement which is a compilation of concepts we found in many cases and held that:

"* * * '[F]ive elements are indispensable in any position of public employment, in order to make it a public office of a civil nature: (1) It must be created by the Constitution or by the Legislature or created by a municipality or other body through authority conferred by the Legislature; (2) it must possess a delegation of a portion of the sovereign power of government, to be exercised for the benefit of the public;

(3) the powers conferred, and the duties to be discharged, must be defined, directly or impliedly, by the Legislature or through legislative authority; (4) the duties must be performed independently and without control of a superior power, other than the law, unless they be those of an inferior or subordinate office, created or authorized by the Legislature, and by it placed under the general control of a superior officer or body; (5) it must have some permanency and continuity, and not be only temporary or occasional.' * * * "[8]

We find all those elements present in the office of deputy sheriff.

▪ Since the office of deputy sheriff, Niobrara County, is not within the contemplation of the Fair Employment Practices Act, we must affirm the result reached by the district court. The district judge reached that result by a recognition of the special status of the sheriff and his deputy but by improper expression of the concepts involved. A deputy sheriff is not an employee of either the sheriff or the Board of County Commissioners; he is appointed by the sheriff to fill a county office specifically authorized by law. [9]

---

7. *Fox v. Petty*, 1930, 235 Ky. 240, 30 S.W. 2d 945, is an interesting case in which the sheriff entered into an agreement prior to his election that in exchange for his support, he would permit a constituent to name 10 of the plaintiff's deputies in the event he was elected sheriff. The defendant was the approving authority and because of such agreement refused to approve the nominee as deputy, one of those recommended by the sheriff's political obligee. While the court held the contract to be invalid as a contract contrary to public policy, it nevertheless held since the designee was of good moral character, qualified to perform the duties, the sheriff was entitled to mandamus to compel approval of the appointment by the county court. The court said that while the contract as between the sheriff and his obligee would not be enforceable in court, the sheriff was not seeking enforcement of the contract. The approval had been withheld only because of the agreement and not because the deputy was not qualified.

8. The initial source of this rule is *State ex rel. Barney v. Hawkins*, 1927, 79 Mont. 506,

528, 257 P. 411, 418, 53 A.L.R. 583, 594. Strangely enough, though, the Montana Court has held to the very minority rule that a deputy sheriff is not a public officer but an employee. *State ex rel. Rusch v. Board of County Commissioners of Yellowstone County*, 1948, 121 Mont. 162, 191 P.2d 670. Other courts around the country use the *Barney* measure as in *Meiland*.

9. The complainant and amicus have argued to us that § 18–173, supra, requires approval by the Board of County Commissioners of the individual appointed by the sheriff as his deputy. We need not and do not rule on that issue because the Board did, in fact, approve the sheriff's choice but we somewhat question that position. If the matter should come before us again, it would seem some attention should be given to the point that the county commissioners only consent to, approve and authorize the number of deputies a sheriff may have within available county funds but do not approve of and consent to the particular individuals the sheriff wants to fill those authorized positions.

Since the Fair Employment Commission has no jurisdiction over the appointment of a deputy sheriff by elected sheriffs, we need not consider whether there was discrimination or whether the award of damages by that state agency was proper.

Affirmed.