Dick DICKESON and Beth Weaver,
Plaintiffs–Appellants,

v.

Deloyd QUARBERG and the Board of
County Commissioners of Hot Springs
County, Wyoming, Defendants–Appel-
lees.

No. 85–1715.

United States Court of Appeals,
Tenth Circuit.

April 25, 1988.

Harold F. Buck, Kline, Buck & Asay, Cheyenne, Wyo., for plaintiffs-appellants.

Lawrence G. Orr, Guy, Williams, White & Argeris, Cheyenne, Wyo., for defendant-appellee DeLoyd Quarberg.

Nickolas G. Kalokathis, Lathrop & Uchner, P.C., Cheyenne, Wyo., for defendant-appellee The Board of County Com'rs of Hot Springs, Wyo.

Before HOLLOWAY, Chief Judge, ANDERSON, Circuit Judge, and BROWN, District Judge.[*]

HOLLOWAY, Chief Judge.

Plaintiffs Dickeson and Weaver filed suit against the defendants Board of County Commissioners of Hot Springs County (Board) and Sheriff Quarberg under 42 U.S.C. § 1983, alleging violations of their constitutional rights under the First and Fourteenth Amendments. They asserted that they had been discharged from their employment in the Sheriff's Department because of their association with the former Sheriff, Walter Harvey, and that their terminations violated their due process rights.

The defendants moved for summary judgment. The district court rejected the plaintiffs' claims of violations of both their

---

[*] The Honorable Wesley E. Brown, of the District of Kansas, sitting by designation.

property and liberty interests. The court concluded that "[i]ncident to the sheriff's power to appoint jailers, deputies and assistants, is the power to remove those appointed ..." I R. 153. The court further held that "as appointees, the terms of plaintiffs' office expired with the term of the appointing officer." *Id.* at 153–54. With respect to the claim that the terminations were made because of plaintiffs' political association with the previous sheriff, the court held that such allegations were meritless because the newly elected sheriff had the authority to make new appointments to the positions. Moreover the court noted that there was no wholesale replacement of appointees and employees, an occurrence which is indicative of constitutionally impermissible motives. *Id.* at 154. Summary judgment was entered in favor of the defendants and both plaintiffs appeal.

# I

## Facts

Construed in the light most favorable to the party opposing summary judgment, as it must be in reviewing a summary judgment,[1] the record shows these facts:

Dickeson was appointed by the previous sheriff, Walter Harvey, as the head jailer for the joint law enforcement facility for the County of Hot Springs and the Town of Thermopolis. V R. 139. He was never deputized. V R. 141. Weaver was likewise appointed by ex-Sheriff Harvey. She worked as an administrative assistant to the sheriff and as a special deputy. Although she devoted ninety percent of her time to secretarial duties, she occasionally acted as a process server. IV R. 140–41. She too was never sworn as a peace officer. IV. R. 140–41.

Sheriff Harvey was defeated by Quarberg in the November 1982 general election.[2] Quarberg assumed office in January 1983. Shortly thereafter he discharged both plaintiffs.[3]

# II

## Procedural Due Process

### A

### Property interest analysis

In order to invoke the procedural safeguards of the Due Process Clause, a plaintiff must show "the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). A protected property interest in continued employment exists only if the employee has "a legitimate claim of entitlement" to continued employment. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. Property interests are not created by the Constitution, but arise from independent sources such as state statutes, local ordinances, established rules, or mutually explicit understandings. *Perry,* 408 U.S. at 601–02 & n. 7, 92 S.Ct. at 2699–2700

---

**1.** In reviewing a summary judgment, an appellate court employs the same standard as that applied by the district court under Fed.R.Civ.P. 56(c) (1982). *See United States v. Gammache,* 713 F.2d 588, 594 (10th Cir.1983). Consequently, we must view the record, including the inferences to be drawn from the underlying facts, in the light most favorable to the party opposing the motion. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). *See also Maughan v. SW Servicing, Inc.,* 758 F.2d 1381, 1387 (10th Cir.1985); *Thomas v. United States Dep't of Energy,* 719 F.2d 342, 344 (10th Cir.1983).

**2.** Although the record shows that Harvey and Quarberg opposed each other in the general election, their respective political parties were never specified in the record. Consequently, while it appears that Quarberg was the Republican candidate and Harvey ran as an Independent, IV R. 64; V R. 11, such conclusions are far from clear. Because the *Elrod–Branti* rationale, discussed below, applies intraparty (if that is the case) as well as interparty, however, *see Tomczak v. City of Chicago,* 765 F.2d 633, 640 (7th Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 313, 88 L.Ed.2d 289 (1985), the ambiguity in the record does not affect our analysis.

**3.** Technically, Quarberg did not discharge the plaintiffs; rather after requiring their resignations before consideration for reappointment, he refused to reappoint them. In the instant case we do not view this circumstance as controlling.

& n. 7. *See also Bishop v. Wood,* 426 U.S. 341, 344 & n. 6, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). If a plaintiff can prove he has a property interest in his employment, a state cannot deprive him of that interest without due process. *See Roth,* 408 U.S. at 576–77, 92 S.Ct. at 2708–09.

The plaintiffs argue that as employees of Hot Springs County, their employment was governed by the Personnel Policies and Practices of Hot Springs County.[4] They say these personnel policies gave them a property interest in their employment and vested them with due process rights.[5] Defendants, on the other hand, assert that the plaintiffs served at the will of the sheriff. According to the defendants, the plaintiffs cannot be viewed as employees of Hot Springs County at all. Rather they were appointees of the sheriff. Consequently any personnel policies covering county employees would not extend to individuals appointed by the sheriff. Indeed, the Board of County Commissioners here argues that the Board and the Sheriff as elected officials have different sets of powers, and that with respect to running a jail and the appointment of deputy sheriffs and jailers, the Commissioners have no power and it is granted exclusively to the sheriff under W.S. § 18–3–602. The Commissioners say that beyond the responsibility of providing funding for running the sheriff's office, they have no further powers over the means and methods chosen by the sheriff to run his office. Brief of the Board of County Commissioners at 3.

We note, however, that the Personnel Policies and Practices of the Board do state that they "shall apply to all full-time Employees of Hot Springs County." I R. 24. It is thus arguable that the policies and practices were applicable to plaintiffs by their terms.

■ We are persuaded that the district court did not err in rejecting the plaintiffs' property interest claims. Wyoming law gives sheriffs broad authority in the appointment of deputies, assistants, jailers, clerks, stenographers and the like to administer their offices. W.S. § 18–3–602 provides that with the consent of the Board of County Commissioners, each county sheriff may appoint one or more full-time deputies and the sheriff may also appoint other assistants as necessary to properly administer the affairs of the office. In § 18–3–602(c), authority is granted for the sheriff to appoint special deputies to perform particular acts and it is provided that such appointments are not required to be filed or revoked as in the case of regular deputies. Furthermore, § 18–3–603(a) provides that the prisoners shall be kept by the sheriff "or by a deputy or jailer appointed for that purpose ..." And we note that the Supreme Court of Wyoming in *Pfister v. Niobrara County,* 557 P.2d 735, 738 (1976), stated that a deputy sheriff is an officer, not an employee and that "he is appointed, not hired." The Court further said that "[a] deputy sheriff is not an employee of either the sheriff or the Board of County Commissioners; he is appointed by the sheriff to fill a county office specifically authorized by law." *Id.* at 742.

Thus the Wyoming Court in the *Pfister* opinion recognizes the distinctive authority of appointment conferred by the Wyoming

---

4. The personnel policies adopted by the Board state, in part:

Although no employee is guaranteed permanent employment in Hot Springs County, the regular employee is assured of reasonable job security so long as he or she continues to render satisfactory service.

I R. 24.

5. The question whether an employee has a property interest in his employment must be determined in accordance with state law. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). Although plaintiffs cite *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), for the proposition that what constitutes a property interest protected by the Due Process Clause rests on federal law, *Loudermill* clearly does not support the plaintiffs' proposition. Rather, it reaffirms the conclusion in *Roth* that property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....", 470 U.S. at 538, 105 S.Ct. at 1491. (citing *Roth,* 408 U.S. at 577), 92 S.Ct. at 2709. *Loudermill* does hold that the question what process is due is to be answered by resort to federal law. 470 U.S. at 541, 105 S.Ct. at 1492.

statutes. 557 P.2d at 742. The broad power of appointment which is vested in the sheriff by § 18–3–602 includes the appointment of not only full-time deputies but also "other assistants as necesary to properly administer the affairs of the office." As noted, § 18–3–603(a) again refers to the authority of the sheriff with respect to a "jailer appointed for that purpose ..." of keeping of prisoners.

Moreover, the Supreme Court of Wyoming in *Carlson v. Bratton,* 681 P.2d 1333, 1336–37 (Wyo.1984), reasoned that, unless modified by a statute or otherwise, the power of appointment to an office such as that of police chief of a city, carries with it as an incident the power of removal. Such authority to remove "is a necessary corollary of that power [of appointment]." *Id.* at 1337.

Under the Wyoming statutes and decisions we are convinced that the district court reached the proper conclusion that the plaintiffs did not have a property interest within the meaning of the Fourteenth Amendment and *Roth* principles with respect to their positions. *See Carlson v. Bratton,* 681 P.2d at 1337; *accord Irby v. Sullivan,* 737 F.2d 1418, 1422 (5th Cir. 1984); *Guy v. Mohave County,* 701 F.2d 73, 77 (9th Cir.1982). We further agree with the district court that the Board of County Commissioners was not empowered to control the sheriff's appointments under his independent office created by the Wyoming statutes with respect to either the appointment of plaintiff Dickeson as a jailer or plaintiff Weaver as an assistant, with her clerical, process service and other functions. Hence no property interest was created by the Personnel Policies and Practices of the Board of County Commissioners.

■ Aside from the Personnel Policies and Practices basis relied on for a property interest, there was also a claim made that explicit understandings existed between former Sheriff Harvey and the plaintiffs which created a property interest in their positions. We are convinced that the evidentiary showing with respect to such understandings was such that this claim could not be dismissed as presenting no genuine issue of fact as to the understandings. Nevertheless, Sheriff Harvey's representations and any understandings he had with plaintiffs were necessarily confined to his term of office under the Wyoming elective system. In light of that system and his limited term, and the new sheriff's appointing powers which we have outlined, we hold that this theory of a claim of a property interest was insufficient as a matter of law.

In sum, the district court properly rejected the plaintiffs' claim of error based on their property interest analysis.

B

*Liberty interest analysis*

■ Plaintiffs argue that the district court also erred in rejecting their liberty interest claims. They say that they alleged that their liberty interests were violated in that they were terminated for constitutionally impermissible reasons including, but not limited to, the fact that they both had been politically associated with Sheriff Harvey and that plaintiff Weaver was alleged to have had an unsubstantiated sexual relationship with Sheriff Harvey. Brief of Appellants at 2.

The district court found that plaintiffs' assertion that their liberty interests were violated was without merit, that there was no indication of stigmatization or injury to plaintiffs' reputations, and that plaintiffs had shown no foreclosure of employment opportunities. I R. 154.

To establish a deprivation of a liberty interest the plaintiffs must show that the actions complained of resulted in the publication of information which was false and stigmatizing. *Bailey v. Kirk,* 777 F.2d 567, 572 (10th Cir.1985); *Sipes v. United States,* 744 F.2d 1418, 1421 (10th Cir.1984). From our review of the record we are unable to find any evidence of publication of false and stigmatizing statements. While there was a showing that defendant Quarberg had made charges about sexual conduct of plaintiff Weaver to her in connection with her discharge, there was no showing of any publication of the state-

ments. And as to plaintiff Dickeson, there was not any showing of any derrogatory statements even being made at all.

■ A liberty interest is not violated when one is discharged without public disclosure of the reasons for the discharge. *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976); *see Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 575, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972). Consequently, the district court was correct in rejecting plaintiffs' liberty interest claims.

### III

### *First Amendment Freedom of Association*

■ Finally, the plaintiffs vigorously contend that Quarberg terminated them because of their past association with ex-sheriff Harvey. This First Amendment freedom of association claim is distinct from the due process claims and must be considered regardless of whether the plaintiffs had a legitimate expectation of continued employment. *See Rampey v. Allen,* 501 F.2d 1090, 1097–98 (10th Cir.1974) (en banc), *cert. denied,* 420 U.S. 908, 95 S.Ct. 827, 42 L.Ed.2d 838 (1975); *Bertot v. School District No. 1, Albany County, Wyo.,* 522 F.2d 1171, 1177 (10th Cir.1975). *See also Perry v. Sindermann,* 408 U.S. 593, 597–98, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972). In *Rampey,* Judge

Doyle's opinion for this court en banc stated that "[s]urely the right to be free from this kind of personality control is a constitutionally protected right under the First Amendment since it is a species of expression." 501 F.2d at 1098.

■ Although an employer has a legitimate interest in ensuring the "political loyalty of employees … to the end that representative government not be undercut by tactics obstructing the implementation of policies of the new administration," *Elrod v. Burns,* 427 U.S. 347, 367, 96 S.Ct. 2673, 2687, 49 L.Ed.2d 547 (1976), that interest cannot be elevated to the level of "personality control." *See Rampey,* 501 F.2d at 1098. Instead, an employer's interest "in promoting the efficiency of the public services it performs through its employees," *Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1735, 20 L.Ed.2d 811 (1968), must be balanced against the interests of the employee as a citizen in exercising his First Amendment rights. *See Rankin v. McPherson,* —— U.S. ——, ——, 107 S.Ct. 2891, 2896–97, 97 L.Ed.2d 315, 324 (1987). And while the precise parameters of these competing interests depend on all the circumstances of the particular case, the Supreme Court has provided some guidance in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).[6]

---

**6.** Two other Supreme Court decisions—*Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed. 2d 708 (1983), and *Rankin v. McPherson,* —— U.S. ——, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) —provide helpful insight into this difficult area of First Amendment jurisprudence. In *Connick,* a district attorney fired his assistant for distributing a questionnaire about the internal operations of the office to other employees. The Court upheld the discharge, concluding:

> We hold only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Connick,* 461 U.S. at 147, 103 S.Ct. at 1690 (citation omitted).

In *Rankin,* on the other hand, the Court overturned the dismissal of a clerical employee for comment on an attempt to assassinate President Reagan. Because the employee "serve[d] no confidential, policymaking, or public contact role," *Rankin,* —— U.S. at ——, 107 S.Ct. at 2899–2900, 97 L.Ed.2d at 328, the Court held that the State's concerns were "so far removed from the effective function of the public employer that they cannot prevail over the free speech rights of the public employee." *Id.,* —— U.S. at ——, 107 S.Ct. at 2900, 97 L.Ed.2d at 329.

These decisions, when read together, demonstrate that while an employer need not tolerate speech on an issue of private concern which disrupts the working environment, he may not summarily discharge an employee for speech on an issue of public concern simply because he disagrees with the content of the speech.

In *Elrod,* a newly elected Democratic sheriff discharged Republican employees of the Cook County, Illinois Sheriff's Department solely because the employees were not affiliated with or sponsored by the Democratic Party. The plurality opinion held that this practice violated the First Amendment rights of the employees. The plurality (consisting of Justices Brennan, White, and Marshall) discerned two interests which were implicated in the case: the individual employee's right to express political beliefs, and the political system's interest in robust and uninhibited debate. *Id.,* 427 U.S. at 355–56, 96 S.Ct. at 2680–81. However, Justice Stewart, in his concurring opinion joined by Justice Blackmun, emphasized that the "single substantive question involved ... is whether a nonpolicymaking, nonconfidential government employee can be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs." *Id.* at 375, 96 S.Ct. at 2690. The concurring Justices on that basis joined the plurality in holding that such a discharge could not be made, and the decision must be read within these confines. *See also Horton v. Taylor,* 767 F.2d 471, 474–75 (8th Cir.1985).

In *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), two assistant public defenders who were among six threatened with dismissal from a staff of nine because they were Republicans. *Id.* at 509, 100 S.Ct. at 1290. The Court held that the dismissals would violate the First Amendment. In so ruling the Court stated that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is *whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.*" *Id.* at 518, 100 S.Ct. at 1295 (emphasis added).

After *Branti,* therefore, the issue whether an employee was in a confidential or policymaking position is not controlling. Rather, the ultimate constitutional question is whether "party affiliation is an appropri-

ate requirement for the effective performance of the public office involved." *Id.* at 518, 100 S.Ct. at 1295. *See also Horton,* 767 F.2d at 478. And while the question whether a policymaking or confidential relationship is involved may be relevant, such categories are no longer dispositive. *Horton,* 767 F.2d at 478. Moreover, the defendant must bear the burden of proof on the issue whether party affiliation (or here, particular political association and support) was an appropriate requirement for the effective performance of the public office involved, under the *Branti* standard. *Laskaris v. Thornburgh,* 733 F.2d 260, 264 n. 4 (3d Cir.), *cert. denied,* 469 U.S. 886, 105 S.Ct. 260, 83 L.Ed.2d 196 (1984). The burden on the plaintiffs is to prove that their discharge or threat of discharge was for the reason that they were affiliated with ex-Sheriff Harvey. *Branti,* 445 U.S. at 517, 100 S.Ct. at 1294 (*quoting Elrod,* 427 U.S. at 350, 96 S.Ct. at 2678).

In determining whether a position is one where "party affiliation is an appropriate requirement for the effective performance of the public office involved," *id.* at 519, 100 S.Ct. at 1295, the circuits differ on the appropriate test to employ. The Seventh Circuit focuses on the office or position rather than the officeholder. *See, e.g., Meeks v. Grimes* 779 F.2d 417, 419 (7th Cir.1985); *Tomczak v. City of Chicago,* 765 F.2d 633, 641 (7th Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 313, 88 L.Ed.2d 289 (1985). "Thus, if an officeholder performs fewer or less important functions than usually attend his position, he may still be exempt from the prohibition against political terminations if his position inherently encompasses tasks that render his political affiliation an appropriate prerequisite for effective performance." *Tomczak,* 765 F.2d at 641. *See also Ness v. Marshall,* 660 F.2d 517, 522 (3d Cir.1981); *Alfaro De Quevedo v. De Jesus Schuck,* 556 F.2d 591, 593 n. 4 (1st Cir.1977). The reasons for focusing on the inherent powers of an office rather than on what the employee actually does or what an employer actually permits his employee to do are two-fold: first, to resolve the issue in one proceeding thus alleviating any need to retry the issue

whether a particular position is protected by *Elrod–Branti;* and, second, to provide certainty to subsequent litigants.

More recently the Seventh Circuit, while reaffirming that the proper focus is on the inherent powers of the office, sounded this cautionary note:

> First, while we focus on the inherent powers of the office rather than the individual who occupies it, ... it is impossible to generalize about the nature of an individual type of position, such as bailiff or secretary; job responsibilities and duties can vary greatly between different governmental units or even within a governmental unit. For example, the plaintiffs are classified under the general heading of bailiffs but their responsibilities differed substantially.... For this reason the test under *Branti* must be applied to each individual office, and status under that formulation is left to the trier of fact to be determined.

*Meeks,* 779 F.2d at 420–22 n. 2 (citations omitted).

The Eighth Circuit, however, has embraced a test which focuses on the actual duties performed by the employee to determine whether a position falls within the *Elrod–Branti* protections. *See, e.g., Horton,* 767 F.2d at 477. *See also Stegmaier v. Trammell,* 597 F.2d 1027, 1035 (5th Cir. 1979). "The *Branti* test is a functional one, focusing on the actual duties an employee performs." *Horton,* 767 F.2d at 477.

■ We discern little difference between the Seventh Circuit test as qualified by *Meeks* and the Eighth Circuit test as articulated in *Horton.* To be sure, any analysis must necessarily begin with the inherent powers of the office at issue. However, titles alone do not provide the answer. The critical question whether a position is one where "party affiliation is an appropriate requirement for the effective performance of the public office involved," *Branti,* 445 U.S. at 519, 100 S.Ct. at 1295, can be answered best by analyzing the nature of the employee's duties and responsibilities. *See Elrod,* 427 U.S. at 367–68, 96 S.Ct. at 2686–87. In close cases, doubt should be re-

solved in favor of the public employee subject to the dismissal. *See id.* at 368, 96 S.Ct. at 2687. *See also Stegmaier,* 597 F.2d at 1035.

With *Elrod* and *Branti* in mind, we must determine whether plaintiffs Dickeson and Weaver were in positions where "party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti,* 445 U.S. at 519, 100 S.Ct. at 1295. Or, more precisely, in these circumstances the issue is whether political loyalty or affiliation with particular persons can be made an appropriate requirement for effective performance in the positions the plaintiffs held. We focus on the inherent powers of the positions as well as on the actual duties performed.

The district court here held:

> With regard to plaintiffs' claims that their nonreappointment occurred because of their political association with the previous sheriff, such allegations, even if accepted as true, are meritless.... [T]he newly elected sheriff had the right and authority to make new appointments to those positions statutorily provided for, such as jailers, special deputies, and assistants. Additionally, the Court notes that there was no wholesale replacement of appointees and employees, an occurrence which is indicative of impermissible constitutional motives.

I R. 154.

We are not sure what standard the district judge employed in making this ruling. However, we feel that the court did not employ the *Elrod–Branti* standard. The dispositive question is not merely one of right or authority to employ; rather it is whether "party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti,* 445 U.S. at 519, 100 S.Ct. at 1295.

■ There are two decisive issues involved with respect to the plaintiffs' First Amendment claims. First, there is the question whether the defendants should prevail because defendant Quarberg had an absolute right to dismiss plaintiffs, regardless of the fact that he did so because of

their political association and affiliation with the former sheriff, due to the nature of their positions and duties performed. As to that issue, we hold that under the standard of the Court in *Elrod* and *Branti,* the asserted defense fails because the positions did not entitle the defendant Quarberg to demand political loyalty credentials and to dismiss because of political association as the plaintiffs claim was done.[7] The second issue is whether there is a genuine issue of material fact as to the actual motivation of the defendant Quarberg in discharging plaintiffs, and on this score we hold that there is such a factual issue which must be resolved on remand. Our reasons for these two holdings follow.

Dickeson was the head jailer for the joint law enforcement facility. V R. 139. He was hired for the position by ex-Sheriff Harvey. And while the record does not contain a formal job description for head jailer for the joint law enforcement facility, it does include testimony about the scope of Dickeson's duties. As head jailer, Dickeson supervised four jailers. V R. 139. Besides housing and feeding prisoners, Dickeson's duties included preparing the work schedule for the jailers, ordering food, planning menus, and preparing meals. V R. 139–40; VI R. 27. Dickeson was not

sworn as a deputy sheriff. V R. 141; VI R. 47.

Weaver was the administrative assistant in the Hot Springs Sheriff's Department. II R. 60; IV R. 38. In addition, she temporarily served as a special deputy. While the record likewise does not contain a formal job description for an administrative assistant, it does contain testimony as to the duties performed by Weaver. Ninety percent of Weaver's duties were secretarial. IV R. 140–41. Such duties included filing, typing, bookeeping, radio communication, and general office work. II R. 61–63; IV R. 38; V R. 143–44. The remaining ten percent of her duties encompassed matron work and serving civil process. IV R. 39, 140–41; V R. 143–44. Weaver was never a sworn deputy, never performed executions on property, and never had powers of arrest. IV R. 42, 140–41; V R. 143–44, 148.

In view of the jobs held by Dickeson and Weaver, and the duties performed by them, we hold that it cannot be said that "party affiliation is an appropriate requirement for the effective performance" of a head jailer or administrative assistant in these circumstances. In *Jones v. Dodson,* 727 F.2d 1329 (4th Cir.1984), although the claim was remanded for further proceedings on

---

7. We recognize that the circuits are split over the question whether the appropriateness of political affiliation to a particular position is a question of law or a question of fact. *Compare Jones v. Dodson,* 727 F.2d 1329, 1337–38 & n. 11 (4th Cir.1984); *Horn v. Kean,* 796 F.2d 668, 670 (3d Cir.1986), *with Soderbeck v. Burnett County, Wis.,* 752 F.2d 285, 288–89 (7th Cir.1985) *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2360, 86 L.Ed.2d 261 (1985); *Stegmaier v. Trammell,* 597 F.2d 1027, 1034 n. 8 (5th Cir.1979); *Horton v. Taylor,* 767 F.2d 471, 482 (8th Cir.1985) (Bowman, J., dissenting). However, we need not decide this procedural issue in the present case.

From the record, the duties of both Dickeson and Weaver are clear and undisputed. Dickeson's job involved housing and feeding prisoners, preparing the work schedule for the other jailers, ordering food, planning menus, and preparing meals. V R. 139–40; V IR. 27. Weaver's job, according to Quarberg's own testimony, was essentially secretarial. II R. 62. It consisted of "typing reports and keeping books, the financial records, doing the billings down to ... the confidentiality of special investigations, or memoranda, or letters, or disciplinary actions,

or whatever." II R. 60. And although Quarberg alleged that he "needed someone with complete confidence in a person, someone who would maintain the complete degree of confidentiality of all sensitive material, because it would all go through that person," II R. 61, we do not believe that his assertion, without more, creates any question of material fact "whether party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti,* 455 U.S. at 518, 100 S.Ct. at 1295. While Weaver undoubtedly had ready access to confidential information concerning law enforcement matters in criminal and civil cases, "that information has no bearing whatsoever on partisan political concerns." *Branti, id.* at 519, 100 S.Ct. at 1295.

Consequently, we conclude that based on the record before us, there is insufficient evidence to raise an issue for the factfinder whether the plaintiffs' jobs required particular political affiliation or association in order to be properly performed. Therefore, we may properly rule on the issue as a matter of law. *Horton,* 767 F.2d at 478.

another issue, the Fourth Circuit concluded that discharge of a deputy sheriff could not be justified on the ground that party affiliation was essential to the effective performance of his duties, stating:

Under the *Branti* test, we do not believe that the duties of deputy sheriffs, no matter what the size of the office, or the specific position of power involved, or the customary intimacy of the associations within the office, or the undoubted need for mutual trust and confidence within any law enforcement agency, could be found to involve policymaking related to "partisan political interests" and to involve access to confidential information "bearing ... on partisan political concerns." *Id.* at 519 [100 S.Ct. at 1295]; *see Nekolny v. Painter*, 653 F.2d 1164, 1170 (7th Cir.1981), *cert. denied*, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982). On this basis we hold that if Sedwick's discharge was solely because of his political party affiliation, it could not as a matter of law be justified under the *Branti* test.

*Id.* at 1338. *Accord Barrett v. Thomas*, 649 F.2d 1193, 1200–01 (5th Cir.1981), *cert. denied*, 456 U.S. 925, 102 S.Ct. 1969, 72 L.Ed.2d 440 (1982).

The job duties of the plaintiffs range from clerical to the housing and feeding of prisoners. The defendant Sheriff Quarberg offers no sufficient justification for demanding greater political loyalty from his head jailer and administrative assistant than Sheriff Elrod was entitled to expect from his employees. *See Elrod*, 427 U.S. 347, 96 S.Ct. 2673. The size of office alone is not enough to preclude the *Elrod–Branti* protections; *Branti* itself involved only nine assistant public defenders. *Branti* 445 U.S. at 509, 100 S.Ct. at 1290. *See also*

*Horton*, 767 F.2d at 476. Moreover, lack of wholesale dismissals does not preclude a finding that a violation of the *Elrod–Branti* principles occurred. Rather, lack of wholesale dismissals may merely be evidence of another motive in the terminations. *See Barnes v. Bosley*, 745 F.2d 501, 507 (8th Cir.1984), *cert. denied*, 471 U.S. 1017, 105 S.Ct. 2022, 85 L.Ed.2d 303 (1985). Furthermore, *Branti* flatly rejected the notion that mutual trust and confidence could only exist between members of the same political party:

We cannot accept the propositon, however, that there cannot be "mutual confidence and trust" between attorneys, whether public defenders or private practitioners, unless they are both of the same political party. To the extent that petitoner lacks confidence in the assistants he has inherited from the prior administration for some reason other than their political affiliations, he is, of course, free to discharge them.

*Branti*, 445 U.S. at 520 n. 14, 100 S.Ct. at 1295–96. *See also Jones*, 727 F.2d at 1338. Quarberg vigorously argues that plaintiff Weaver's civil process serving duties exempt her from the *Elrod–Branti* protection. We disagree and note that in *Elrod*, the Sheriff's process servers were held to be protected from firing for political reasons. *Elrod*, 427 U.S. at 350–51, 96 S.Ct. at 2678–79. *See also Meeks*, 779 F.2d at 423.

For these reasons we hold that both plaintiffs Dickeson and Weaver come with the protection of the First Amendment as applied in *Elrod* and *Branti* and that the absolute defense asserted of a right to dismiss them, even for reasons based on their association with the former Sheriff, must be rejected.[8]

---

**8.** We recognize that our holding will foreclose any argument by Quarberg that party affiliation is an appropriate requirement for the positions occupied by Dickeson and Weaver. As a consequence, our disposition of this issue has the effect of granting a partial summary judgment on the issue in favor of Dickeson and Weaver, even though they did not move for summary judgment. Nonetheless, we believe that this procedure is appropriate in the present case.

"[T]he weight of authority is that summary judgment may be rendered in favor of the opposing party even though he has made no formal cross-motion under rule 56." 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure: Civil 2d* § 2720. And while an appellate court should not grant summary judgment in favor of the nonmoving party where the movant has not had the opportunity to present the applicable facts, *Fountain v. Filson*, 336 U.S. 681, 683, 69 S.Ct. 754, 755, 93 L.Ed. 971 (1949),

We hold, however, that plaintiffs' First Amendment claims do, on the second issue, implicate a genuine issue of material fact as to whether defendant Quarberg actually discharged plaintiffs due to their association with the former sheriff.[9] On remand, plaintiffs should be allowed to attempt to prove that they were discharged because of their party affiliation and/or association with ex-Sheriff Harvey. Quarberg then should be permitted to rebut such a showing with sufficient evidence of nonpolitical and permissible motives for the challenged conduct. *See Jones,* 727 F.2d at 1339–40 and n. 16; *Barrett,* 649 F.2d at 1200.

## IV

### *Conclusion*

Accordingly, the summary judgment for defendants is AFFIRMED insofar as the district court rejected the plaintiffs' claims of violation of property interests in their positions and violation of their procedural due process rights under the Fourteenth Amendment. The judgment is further AFFIRMED insofar as the district court rejected the plaintiffs' claims of violations of liberty interests protected by the Fourteenth Amendment. The summary judgment is REVERSED with respect to the rejection of the plaintiffs' claims of viola-

tions of First Amendment and Fourteenth Amendment rights of association by their discharges; the latter claims are RE-MANDED to the district court for further proceedings in accord with this opinion.

IT IS SO ORDERED.

---

"if the facts were fully developed at the summary judgment hearing so that the court of appeals can determine that the nonmoving party clearly was entitled to a judgment as a matter of law, an entry of judgment for the nonmoving party may be proper if there is no procedural prejudice to the moving party." C. Wright, A. Miller & M. Kane, *supra.*

In the present case, we believe that the parties had the opportunity to present—and did present—all of the applicable facts concerning the parameters of the positions held by Dickeson and Weaver. Both Dickeson and Harvey testified in some detail about Dickeson's job duties. *See* VI R. 26–33; V R. 138–41. Likewise, Weaver, Harvey and Quarberg all testified about Weaver's responsibilities. *See, e.g.,* IV R. 37–51; V R. 141–49; II R. 60–62. In light of the extensive testimony about Dickeson's and Weaver's positions, therefore, we conclude that the scope of the positions at issue were fully explored, making partial summary judgment appropriate.

**9.** The present record reveals that a genuine issue of fact on this point is looming. The plain-

tiffs contend that they were terminated because of their association with ex-Sheriff Harvey. Dickeson stated in his deposition that Quarberg fired him because of his association with ex-Sheriff Harvey and that Quarberg stated to him that the blackmarks against him were his association with Harvey. VI R. 44, 52, 87. Weaver also stated in her deposition that at a meeting of all Sheriff Department employees, Quarberg essentially stated that those who had not campaigned for him need not bother re-applying for their jobs. IV R. 73. Weaver also recounted in her deposition a meeting she had with Quarberg where Quarberg when notifying her of her termination said "I want a person that is not a friend of Walt Harvey's. . . ." and stated that he was not going to keep her on because of her failure to campaign and vote for him. IV R. 81, 82, 84.

In his deposition Quarberg had different justifications for his actions. He testified that he fired Dickeson because of his unprofessional conduct and because of his views on sex. II R. 26. He testified that he fired Weaver because he lacked confidence in her and because of her reputation. II R. 60, 62–70, 76.