FILED
United States Court of Appeals
Tenth Circuit

**March 11, 2008**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SHAREE GANN, an individual,

    Plaintiff - Appellee,

v.

CAROL CLINE, in her individual
capacity; THE BOARD OF COUNTY
COMMISSIONERS OF THE
COUNTY OF OKLAHOMA, State of
Oklahoma; DOUG WILLIAMS, in his
individual and official capacities,

    Defendants,

    and

BRENT RINEHART, in his individual
and official capacities,

    Defendant - Appellant.

No. 07-6011

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CIV-06-184-C)**

---

Andrew W. Lester, (Courtney D. Powell and Shannon F. Davies with him on the
brief), of Lester, Loving & Davies, P.C., Edmond, Oklahoma, for Plaintiff -
Appellee.

Victor F. Albert of Conner & Winters, L.L.P., Oklahoma City, Oklahoma, for
Defendant - Appellant.

Before **KELLY**, **EBEL**, and **McCONNELL**, Circuit Judges.

**KELLY**, Circuit Judge.

Defendant-Appellant Brent Rinehart, Oklahoma County Commissioner, in his individual capacity, appeals the district court's denial of his Fed. R. Civ. P. 12(b)(6) motion to dismiss on qualified immunity grounds. Plaintiff-Appellee Sharee Gann brought this action pursuant to 42 U.S.C. § 1983, alleging Commissioner Rinehart, acting under color of state law, violated her First Amendment rights by engaging in political patronage. Our jurisdiction arises under 28 U.S.C. § 1291 and the collateral order doctrine allowing an interlocutory appeal from the denial of qualified immunity that rests upon purely legal grounds, Johnson v. Jones, 515 U.S. 304, 317 (1995); Mitchell v. Forsyth, 472 U.S. 511, 530 (1985), and we affirm.

Background

The following alleged facts are assumed to be true for purposes of Commissioner Rinehart's motion to dismiss. In January 2001, Ms. Gann was hired as an administrative assistant at the District 2 office of then Oklahoma County Commissioner Jack Cornett. She was later transferred to the operations site as office manager, replacing Leta Dyer, who had been terminated by Mr.

2

Cornett. Ms. Gann ultimately assumed the duties of requisitions manager in addition to her other duties. In 2004, Mr. Rinehart was elected as County Commissioner and replaced Mr. Cornett. Although Ms. Dyer campaigned for and supported Mr. Rinehart during the 2004 election, Ms. Gann did not campaign for either Mr. Rinehart or Mr. Cornett.

On December 29, 2004, Mr. Rinehart hired Ms. Dyer to work as a temporary employee. Later, Mr. Rinehart twice attempted but failed to remove Ms. Gann from her position as requisitions manager. In addition, he transferred Ms. Gann's job duties to Ms. Dyer. Before the rehiring process, he told a county director that he was going to replace Ms. Gann with Ms. Dyer. In March 2005, Rinehart interviewed both Ms. Dyer and Ms. Gann during the rehiring process, but opted to hire Ms. Dyer as office manager. Although current District 2 employees had been told they would receive priority in hiring, Ms. Gann was terminated on April 8, 2005.

In this action challenging Mr. Rinehart's exercise of political patronage,[1] Ms. Gann alleges that Mr. Rinehart replaced her with Ms. Dyer because Ms. Dyer demonstrated her political loyalty to Mr. Rinehart by supporting his campaign while Ms. Gann failed to do so. Ms. Gann also alleges that she did not participate

---

[1] The First Amended Complaint names Mr. Rinehart in both his individual and official capacities and alleges violations of free speech, slander, and wrongful termination against three other named defendants. This appeal concerns only Ms. Gann's political patronage claim against Mr. Rinehart in his individual capacity.

3

in confidential or policy-making decisions under either Mr. Cornett or Mr. Rinehart and thus party affiliation was not a requirement for her position. Mr. Rinehart does not dispute this.

Mr. Rinehart filed a motion to dismiss Ms. Gann's political patronage claim on qualified immunity grounds, arguing that his conduct did not violate Ms. Gann's constitutional rights and, even if it did, those rights were not clearly established by controlling precedent at the time of his conduct. In an unpublished order, the district court denied Mr. Rinehart's motion to dismiss, finding that Mr. Rinehart's conduct violated Ms. Gann's clearly established right to political non-affiliation. Aplt. App. at 115. This appeal followed.

## Discussion

As this qualified immunity appeal comes to us on the denial of a motion to dismiss, the customary pleading standard applies and our review is de novo. See Boles v. Neet, 486 F.3d 1177, 1180 (10th Cir. 2007) (denial of qualified immunity is reviewed de novo); Currier v. Doran, 242 F.3d 905, 916-17 (10th Cir. 2001) (rejecting "heightened pleading standard" for qualified immunity). We accept as true all well-pleaded allegations of a plaintiff's complaint and view them in the light most favorable to the non-moving party. Anderson v. Blake, 469 F.3d 910, 913 (10th Cir. 2006). The complaint must plead sufficient facts, that when taken as true, provide "plausible grounds" that "discovery will reveal

4

evidence" to support plaintiff's allegations. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

"The doctrine of qualified immunity shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law." Elder v. Holloway, 510 U.S. 510, 512 (1994). Thus, to determine whether a public official is entitled to qualified immunity, we first consider whether the plaintiff's factual allegations show that the official's conduct violated a constitutional right, and if they do, we examine whether the right was clearly established. See Saucier v. Katz, 533 U.S. 194, 200 (2001). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). A plaintiff can demonstrate that a constitutional right is clearly established "by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." Anderson, 469 F.3d at 914.

A.    Political Patronage

Political patronage is the practice whereby "public employees hold their jobs on the condition that they provide, in some acceptable manner, support for the favored political party." Elrod v. Burns, 427 U.S. 347, 359 (1976). Although this practice has existed on the federal level at least since the Presidency of Thomas Jefferson, id. at 353, the practice may violate the First Amendment where

5

a public employee is discharged because of his or her "'political beliefs, affiliation, or non-affiliation unless [his or her] work requires political allegiance.'" Snyder v. City of Moab, 354 F.3d 1179, 1184 (10th Cir. 2003) (quoting Mason v. Okla. Tpk. Auth., 115 F.3d 1442, 1451 (10th Cir. 1997)). Although the First Amended Complaint refers to both Ms. Gann's termination and to Commissioner Rinehart's failure to rehire her, it does not matter for constitutional purposes whether she was fired or just not rehired for political patronage reasons. See Rutan v. Republican Party of Ill., 497 U.S. 62, 72, 76-78 (1990). Political patronage need not be the sole reason for an employee's discharge, it need only constitute a substantial or motivating factor. See Mason, 115 F.3d at 1451-52; see also Branti v. Finkel, 445 U.S. 507, 514-15 (1980). Once a plaintiff proves political patronage was a substantial or motivating factor behind his dismissal, the burden of persuasion shifts to the defendant to prove, as an affirmative defense, that the discharge would have occurred regardless of any discriminatory political motivation. Mason, 115 F.3d at 1452.

B.    Analysis

Mr. Rinehart argues he is entitled to qualified immunity because his alleged conduct did not violate a constitutional right. In support of his position, Mr. Rinehart argues political non-affiliation is not protected by the First Amendment and thus he cannot be liable to Ms. Gann because she did not actively contest his election or affirmatively demonstrate an opposing political affiliation. He also

6

argues that even if non-affiliation is constitutionally protected, because Ms. Gann never told him that she was apolitical, it was impossible for her apolitical status to constitute a substantial or motivating factor in his decision to discharge her. Finally, Mr. Rinehart argues that even if his conduct amounted to a constitutional violation, the right to political non-affiliation was not clearly established at the time his conduct occurred. We address each of these contentions in turn and conclude that Mr. Rinehart is not entitled to qualified immunity.

First, we reject Mr. Rinehart's argument that he did not engage in political patronage because Ms. Gann did not actively contest his election or affirmatively demonstrate an opposing political affiliation. Discrimination based on political non-affiliation is just as actionable as discrimination based on political affiliation. See Rutan, 497 U.S. at 64; Branti, 445 U.S. at 517; Elrod, 427 U.S. at 350; Bass v. Richards, 308 F.3d 1081, 1091 (10th Cir. 2002); Mason, 115 F.3d at 1451. In Rutan, the Supreme Court summarized:

> To the victor belong only those spoils that may be constitutionally obtained. Elrod v. Burns, 427 U.S. 347 (1976), and Branti v. Finkel, 445 U.S. 507 (1980), decided that the First Amendment forbids government officials to discharge or threaten to discharge public employees solely for not being supporters of the political party in power, unless party affiliation is an appropriate requirement for the position involved.

Rutan, 497 U.S. at 64-65 (extending Elrod and Branti to invalidate political patronage practices related to promotion, transfer, recall, and hiring of low-level public employees) (emphasis added). Thus, the "First Amendment prevents the

7

government, except in the most compelling circumstances, from wielding its power to interfere with its employees' freedom to believe and associate, <u>or to not believe and not associate</u>." <u>Id.</u> at 76 (emphasis added).

We have previously observed that the plaintiffs in <u>Elrod</u> and <u>Branti</u> "were not required to demonstrate that they suffered an adverse employment action because of their support for an actual candidate. Rather it was sufficient that they were fired for failing to endorse or pledge allegiance to a particular political ideology." <u>Bass</u>, 308 F.3d at 1091. Indeed, we denied qualified immunity on the basis of this observation. <u>Id.</u>

Thus, it is irrelevant whether Ms. Gann actively campaigned for Mr. Rinehart's opponent or merely declined to campaign for Mr. Rinehart. All that matters is that Ms. Gann was discharged because she did not campaign for or support Mr. Rinehart. In other words, our only relevant consideration is the impetus for the elected official's employment decision vis-a-vis the plaintiff, i.e., whether the elected official prefers to hire those who support or affiliate with him and terminate those who do not. <u>See</u> <u>Mason</u>, 115 F.3d at 1451 n.5 ("it is enough to show that the plaintiff was discharged to make room for a person with political sponsorship the plaintiff lacked"); <u>see also</u> <u>Bass</u>, 308 F.3d at 1091 ("there is no meaningful distinction for First Amendment purposes between nonpartisan political alignment and membership in a political party"). In addition to abundant Supreme Court and Tenth Circuit authority, the Third Circuit reached the same

8

conclusion on almost identical facts, albeit after the conduct occurred in this case. See Galli v. N.J. Meadowlands Comm'n, 490 F.3d 265, 272-74 (3d Cir. 2007).

Mr. Rinehart cites to a handful of cases to support his position. See Jantzen v. Hawkins, 188 F.3d 1247 (10th Cir. 1999); Six v. Henry, 42 F.3d 582 (10th Cir. 1994); Busey v. Bd. of County Comm'rs of the County of Shawnee, Kan., 277 F. Supp. 2d 1095 (D. Kan. 2003); Sims v. Bd. of Pub. Util. of Kan. City, Civ. A. No. 89-2328-O, 1991 WL 49792 (D. Kan. Mar. 28, 1991) (unpublished opinion). His reliance is entirely misplaced. To the extent these cases involved plaintiffs who were allegedly terminated for actively campaigning against their superiors, none require such facts to support a political patronage claim. Indeed, most of these cases explicitly recognize that political non-affiliation is constitutionally protected. See Jantzen, 188 F.3d at 1251; Busey, 277 F. Supp. 2d at 1108; Sims, 1991 WL 49792, at *11.

Second, we reject Mr. Rinehart's argument that Ms. Gann has not sufficiently alleged causation. He argues that it was impossible for Ms. Gann's apolitical status to constitute a substantial or motivating factor in his decision to discharge her because Ms. Gann never made her political non-affiliation known to him. Mr. Rinehart further suggests that if we were to deny him qualified immunity on these facts, we would be sanctioning future patronage claims by any public employee who keeps her political beliefs private but suffers from an adverse employment decision, because the employee can always claim after-the-

9

fact that her beliefs were not aligned with those of her employer. We are not persuaded. As explained earlier, a plaintiff must establish a causal link between the plaintiff's political beliefs, or lack thereof, and the defendant's adverse employment decision with respect to the plaintiff. See Mason, 115 F.3d at 1451-52. There are, of course, many ways to establish such a link beyond requiring a plaintiff to tell her boss that she does not subscribe to his political beliefs. Here, Ms. Gann sufficiently alleges causation by claiming that Mr. Rinehart's decision to replace her with Ms. Dyer was motivated by the fact that she did not actively campaign for him while Ms. Dyer did. See id. at 1451 n.5.

Mr. Rinehart also claims he never cautioned Ms. Gann about her decision not to support him nor did he conduct meetings to discuss Ms. Gann's political beliefs. That Mr. Rinehart never pressured or forced Ms. Gann to support him or silence her political beliefs is irrelevant. "[T]here is no requirement that dismissed employees prove that they, or other employees, have been coerced into changing, either actually or ostensibly, their political allegiance." Branti, 445 U.S. at 517. Accordingly, Ms. Gann has sufficiently alleged that Mr. Rinehart's conduct constituted a constitutional violation.

Finally, we reject Mr. Rinehart's argument that, at the time of his conduct, the First Amendment right to "non-affiliation" was not clearly established. Mr. Rinehart contends that the law could not be clearly established because political patronage dismissals are approached on a case-by-case basis. In support of this

10

argument, he relies on <u>Ortiz v. San Miguel County</u>, 955 F. Supp. 1338, 1346 (D.N.M. 1996) for the proposition that other circuits, such as the Second and Sixth Circuits, have adopted such an approach.  However, <u>Ortiz</u> and the cases it relied on granted qualified immunity because in each case it was unclear from existing precedent whether plaintiff's position was one that was properly subject to patronage dismissal.  <u>Id.</u>; <u>see also</u> <u>Mumford v. Zieba</u>, 4 F.3d 429, 434 (6th Cir. 1993); <u>Cagle v. Gilley</u>, 957 F.2d 1347, 1349 (6th Cir. 1992); <u>Hawkins v. Steingut</u>, 829 F.2d 317, 320 (2d Cir. 1987).  Although it is a question of fact whether political association is an appropriate requirement for a position, that question may be decided as a matter of law if the facts as to the nature of the duties of the position are undisputed.  <u>Snyder</u>, 354 F.3d at 1185.  Here, Ms. Gann sufficiently alleges and Mr. Rinehart does not dispute that her position was not properly subject to patronage dismissal.

In any event, long before the alleged conduct occurred in this case, the Supreme Court clearly held that for plaintiffs to prevail on a political patronage claim, it is sufficient to prove "that they were discharged 'solely for the reason that they were <u>not affiliated</u> with or sponsored by'" a particular political party or ideology.  <u>Branti</u>, 445 U.S. at 517 (quoting <u>Elrod</u>, 427 U.S. at 350) (emphasis added).  Later, in <u>Rutan</u>, decided almost fifteen years before Mr. Rinehart discharged Ms. Gann, the Court reaffirmed that under <u>Elrod</u> and <u>Branti</u>, "conditioning hiring decisions on political belief and association plainly

11

constitutes an unconstitutional condition, unless the government has a vital interest in doing so." Rutan, 497 U.S. at 78. This restriction protects "employees' freedom to believe and associate, or to not believe and not associate." Id. at 76 (emphasis added). Finally, as discussed earlier, we have previously denied qualified immunity on the basis of our observation that the plaintiffs in Elrod and Branti "were not required to demonstrate that they suffered an adverse employment action because of their support for an actual candidate. Rather it was sufficient that they were fired for failing to endorse or pledge allegiance to a particular political ideology." Bass, 308 F.3d at 1091.

Notwithstanding such clear pronouncements by the Supreme Court and this Court, Mr. Rinehart claims that the above cited language constitutes dicta because none of these decisions involved a plaintiff who was apolitical. We disagree with Mr. Rinehart's reading of these cases and note that we are applying the express constitutional rule adopted by the Supreme Court and applied in our cases. See United States v. Lanier, 520 U.S. 259, 271 (1997). Thus, "there need not be precise factual correspondence between earlier cases and the case at hand . . . . [A] general constitutional rule that has already been established can 'apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful.'" See Anderson, 469 F.3d at 913-14 (quoting Hope v. Pelzer, 536 U.S. 730, 741 (2002) (second alteration in original)). Even if the facts of controlling precedent do not precisely match those

12

of the instant case, such precedent nonetheless placed Mr. Rinehart on reasonable notice that his conduct was unlawful.

AFFIRMED.