EBEL, Circuit Judge,
dissenting.
The majority opinion affirms the district court’s grant of summary judgment for defendants on the association claim, finding that the Road Foreman position in Sequoyah County, Oklahoma, is politically sensitive and County Commissioners may, therefore, demand political loyalty from their Road Foremen. The majority opinion also affirms summary judgment for defendants on the speech claim, finding that there was “no evidence that Poindex-ter’s expression of loyalty to Harrell in July 2005 offended Huff or was to his political disadvantage at that time, and therefore no reason to infer that this was a motivating factor in the subsequent demotion.” (Maj. Op. at 924.) I disagree with the majority’s conclusions on both these claims, and write separately to explain my position. Because I find that the position of Road Foreman may not require political loyalty and that this issue should be submitted to the jury, I address two issues the majority was able to avoid: (1) whether plaintiff has adequately alleged facts that could support a finding that he was fired because of his protected association; and (2) whether Huff is entitled to qualified immunity.
7. Political Association
To determine whether a public employee was wrongfully demoted for his political affiliations, a court must address two issues: (1) whether the employee’s political affiliations caused his demotion; and (2) whether the employee held a position which legitimately required his political allegiance. See Barker v. City of Del City, 215 F.3d 1134, 1137 (10th Cir.2000) (stating that “public employees receive First Amendment protection from discrimination based upon their political beliefs, affiliation, or non-affiliation unless their work requires political allegiance”) (quoting Mason v. Okla. Turnpike Auth., 115 F.3d 1442, 1451 (10th Cir.1997)). The Supreme Court’s decisions in Elrod v. Burns, 427 U.S. 347, 372, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and Branti v. Finkel, 445 U.S. 507, 518, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) provide that an employer may fire *925 his employees because of their political affiliation if “party affiliation is an appropriate requirement for the effective performance of the public office involved.” Dickeson v. Quarberg, 844 F.2d 1435, 1441 (10th Cir.1988) (quoting Branti, 445 U.S. at 518, 100 S.Ct. 1287).

A. Causation

When deciding a motion for summary judgment, we “view the evidence and draw any inferences in a light most favorable to the nonmovant.” GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1387 (10th Cir.1997) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Viewing the evidence in the light most favorable to the plaintiff, I conclude that Poindexter presented enough evidence that he was demoted because of his political affiliation to overcome a motion for summary judgment.
The plaintiff has alleged both contested and uncontested facts in support of his claim that he was demoted because of his political affiliation. The uncontested facts are that: (1) until Cleon Harrell dropped out of the race, the plaintiff supported Cleon Harrell against Mike Huff in the election for County Commissioner; (2) the defendant knew that plaintiff was supporting his rival; and (3) as soon as defendant became the Commissioner, he demoted the plaintiff.
The parties disagree over the precise timing of Huffs decision to hire Watts as his Road Foreman. Huff claims that, during his November 2005 conversation with Poindexter, Poindexter stated that he no longer wanted to be Road Foreman. Huff claims that he decided to hire Watts only after Poindexter informed him that he no longer wanted the job. Poindexter contests Huffs version of their conversation, and claims Huff informed him during their conversation in November 2005 that he had already decided to hire Watts.
Poindexter’s version of his November 2005 conversation with Huff supports his claim that he was fired in retaliation for his political association in two ways. First, if the jury finds that Huff had decided to hire Watts as his Road Foreman sometime before his November 2005 conversation with Poindexter, the proximity between Poindexter’s declaration of support for Harrell and Huffs decision to hire Watts could support an inference that Poindex-ter’s affiliation with Harrell caused his demotion.[1] See Maestas v. Segura, 416 F.3d 1182, 1189 (10th Cir.2005) (“An employer’s knowledge of the protected speech, togeth *926 er with close temporal proximity between the speech and challenged action, may be sufficiently probative of causation to withstand summary judgment.”)-[2]
Second, if the jury believes Poindexter’s version of his November 2005 conversation with Huff, the jury could also find that Huff fabricated his version of their conversation to provide a pretext for Poindexter’s demotion. This (entirely permissible) finding would provide substantial support to Poindexter’s claim. See Ware v. Unified School Dist. No. 492, Butler County, State of Kansas, 881 F.2d 906, 911 (10th Cir.1989) (modified in part, 902 F.2d 815 (10th Cir.1990)) (“A plaintiff may create a reasonable inference of improper motivation by presenting evidence tending to show that the reasons proffered for the adverse action are without factual support.”). Thus, the plaintiff has presented more than enough evidence that his constitutionally protected affiliation caused his demotion to withstand a motion for summary judgment.

B. Political Loyalty of the Road Foreman

As the majority concede, a determination of “[wjhether political association is an appropriate requirement for a position has been held to be a question of fact. However that question may be resolved as a matter of law if the facts as to the nature of the duties of the position are undisputed.” Snyder v. City of Moab, 354 F.3d 1179, 1185 (10th Cir.2003) (affirming jury’s verdict for defendant because there was some evidence that plaintiffs position required political loyalty) (emphasis added). Critically, the nature of the duties of the Road Foreman position in this case are contested, and so the jury should decide whether the effective implementation of the Road Foreman’s responsibilities necessitated his political loyalty to the Commissioner. It is beyond our competence as judges to determine whether the Road Foreman position requires political loyalty.[3]
As the defendant in this case, Huff “must bear the burden of proof on the issue whether [political] affiliation ... was an appropriate requirement for the effective performance of the public office involved.” Dickeson, 844 F.2d at 1442; see also Branti, 445 U.S. at 518 (stating that when determining whether political affilia *927 tion is an appropriate basis for demotion, “the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved”) (emphasis added). In this case, however, the most important evidence supporting the plaintiffs position that the Road Foreman does not need to be politically loyal is Huffs own insistence that he did not care if Poindexter supported a different candidate or ran against him in the elections. [R. at 39, 305-05] Huff stated at his deposition, “I didn’t care if [Poin-dexter] run [sic] for county commissioner. He could run for it and if I won the election, he could still be the road foreman.” [R. at 305] Similarly, Huff was asked, “When you were thinking about who you were going to hire as your road foreman, did you consider their political affiliation or association ... ?” Huff responded, “No, I didn’t mind if they supported somebody else, no sir.” [R. at 307] These statements strongly suggest that Huff did not think the job necessitated political loyalty, and Huff is in a far better position than the members of this court to evaluate the necessity of the Road Foreman’s political allegiance to the County Commissioner.[4]
The majority concludes that based on the record in this case, “a reasonable jury would be forced to conclude that the office of Road Foreman has a significant political dimension.” (Maj. Op. at 920.) I disagree with the majority’s assessment of the record and find that material questions of fact remain regarding whether this position legitimately necessitated political allegiance. The strongest evidence supporting Poin-dexter’s position is Huffs insistence that based on his understanding of the nature of the Road Foreman position, political allegiance was not necessary. However, other evidence also supports Poindexter’s argument that factual questions remain. For example, the majority rejects Poindex-ter’s assertion that material questions of fact remain with regards to “whether the road foreman performs the duties of the Commissioner if he is absent.” (Maj. Op. at 922.) For that conclusion, the majority relies heavily on Poindexter’s affirmation of the defense counsel’s statement that Poindexter would “step into somewhat [the commissioner’s] shoes with respect to running the county” when the commissioner was absent. (See Maj. Op. at 922.) Unlike the majority, however, I find that Po-indexter’s affirmation of the defense counsel’s statement is inadequate to dispose of this factual issue. First, Poindexter never explained what stepping “somewhat into [the commissioner’s] shoes” entailed. [R. at 60-61 (emphasis added)] The commissioner was responsible for a wide range of highly sensitive political matters.[5] With no further elaboration from Poindexter, or other evidence suggesting that Poindexter was ever involved in anything beyond issues related to road repair and maintenance, his affirmation of defense counsel’s statement that he “stepped somewhat into *928 [the commissioner’s] shoes” is far too ambiguous to support the majority’s conclusion that no disputed issue of material fact remained on this issue. Second, other evidence in the record supports a far narrower view of Poindexter’s responsibilities in Harrell’s absence. For example, former Commissioner Harrell submitted an affidavit supporting Poindexter’s opposition to the defendants’ motion for summary judgment in which he stated, “[i]n my absence, I did not believe Mr. Poindexter was empowered or otherwise authorized to perform my duties as elected Commissioner for District 3, such as setting policy, attending Board meetings, entering into contracts on behalf of the County, hiring, or voting.” [R. at 479-80] Similarly, in a different portion of his affidavit, Poindex-ter testified that the other two County Commissioners supervised his work after Harrell stepped down, and the only difference in his job was that “instead of having one boss, [he] had two bosses.” [R. at 136] These differing and incomplete factual accounts are insufficient to establish the nature of the Road Foreman position as a matter of law, and highlight the reasons that this inquiry should remain the sole province of the jury.

II. Speech Claim

In determining whether an employee was wrongfully demoted because of his political speech, this court applies the five-prong Garcetti/Pickering balancing test. See Brammer-Hoelter v. Twin Peaks Charter Academy, 492 F.3d 1192, 1202-03 (10th Cir.2007) (“After the Supreme Court’s recent decision in Garcetti [v. Ceballos, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006)], it is apparent that the ‘Pickering’ analysis of freedom of speech retaliation claims is a five step inquiry which we now refer to as the ‘Garcet-ti/Pickering ’ analysis.”) (internal citations and quotations omitted). However, the district court in this case applied the older, four-prong Pickering test. (See Ct. Order at 5.) The main substantive change engendered by the new test is a preliminary determination of whether the employee spoke “pursuant to his official duties,” Garcetti 547 U.S. at 421-22, 126 S.Ct. 1951, which no one alleges was the case here. Therefore, for ease of review, I will refer to the four-prong Pickering test. Under the four-prong Pickering test,
First, we must determine whether the employee’s speech involves a matter of public concern. If so, we then balance the employee’s interest in commenting upon matters of public concern against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. Third, if the balance tips in favor of the employee, the employee then must show that the speech was a substantial factor or a motivating factor in the detrimental employment decision. Fourth, if the plaintiff establishes that speech was such a factor, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech.
Finn v. New Mexico, 249 F.3d 1241, 1247 (10th Cir.2001) (internal citations and quotations omitted).
The district court in this case determined that Poindexter had adequately demonstrated the first two prongs of the Pickering test: (1) that Poindexter’s speech in support of Harrell involved a matter of public concern; and (2) that Poindexter’s interest in the speech outweighed Huffs interest in “promoting the efficiency of the public services [he] performs through [his] employees.” Id. I agree with the district court’s decision on these prongs, and would only note one additional factor strongly supporting the *929 district court’s determination on the second prong.[6] In Jcmtzen, 188 F.3d at 1257-58, we held that a deputy sheriffs interest in stating that he would run against his boss for sheriff was outweighed by the sheriffs need to prevent disruption in effective law enforcement. We relied heavily on the sheriffs testimony that, in his experience, having two people running for office would disrupt them from properly doing their job, and noted that “we will defer to a public employer’s reasonable predictions of disruptions.” Id. at 1257 (quoting Cragg v. City of Osawatomie, 143 F.3d 1343, 1346 (10th Cir.1998)); see also Worrell v. Henry, 219 F.3d 1197, 1208-09 (10th Cir.2000) (relying on employer’s prediction that plaintiffs prospective co-workers would not cooperate with him because of his constitutionally protected speech, and holding that the employer’s interest in effective law enforcement therefore outweighed the plaintiffs interest in his free speech). If we defer to an employer’s arguably self-serving prediction of disruption, we should certainly defer to his prediction that there would not be any disruption. In this case, Huff stated that it would not matter to him if his Road Foreman campaigned for a different candidate. We should defer to Huffs statements in this regard, and conclude that any potential disruption arising out of Poindexter’s support for Harrell would be too minimal to justify an attempt to silence that support.
The district court also determined, and the majority agreed, that Poindexter failed to provide sufficient evidence on the third prong of the Pickering test addressing causation. The majority found that there was “no evidence that Poindexter’s expression of loyalty to Harrell in July 2005 offended Huff or was to his political disadvantage at that time, and therefore no reason to infer that this was a motivating factor in the subsequent demotion.” (Maj. Op. at 924.) However, as I’ve discussed above, the timing of Huffs decision to demote Poindexter, his knowledge of Poin-dexter’s support for Harrell, and the possibility that the jury could conclude that he lied about his true motives for demoting Poindexter provide enough evidence of causation that the issue of causation should be decided by a jury.
Finally, the fourth prong of the Pickering test, whether Huff can point to evidence that he would have demoted Poin-dexter even if Poindexter had not stated his support for Harrell, should be decided by the jury.

III. Qualified Immunity

“Determining whether a defendant is entitled to qualified immunity involves answering two questions: (1) whether a plaintiff has asserted that the defendant violated a constitutional or statutory right, and if she has, (2) whether that right was clearly established such that a reasonable person in the defendant’s position would have known that his conduct violated that right.” Keylon v. City of Albuquerque, 535 F.3d 1210, 1218 (10th Cir.2008) (internal citations and quotations omitted).
The district court held that Huff was entitled to qualified immunity because Po-indexter had failed to “establish a First Amendment violation.” (Ct. Order at 12.) I think the district court erred in its determination that, as a matter of law, Huff did *930 not violate Poindexter’s First Amendment rights. I must, therefore, address the second prong of the qualified immunity analysis and determine if the rights Poindexter alleges were violated were “clearly established” at the time of the alleged violation. I conclude that Poindexter has adequately alleged violations of clearly established laws, so Huff is not entitled to qualified immunity.

Political Affiliation Claim

The right not to be demoted from a position that does not require political allegiance is clearly established in both Supreme Court and Tenth Circuit caselaw. See Gann v. Cline, 519 F.3d 1090, 1095 (10th Cir.2008) (“[C]onditioning hiring decisions on political belief and association plainly constitutes an unconstitutional condition, unless the government has a vital interest in doing so.”) (quoting Rutan v. Republican Party of Ill., 497 U.S. 62, 78, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990)).
“Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.” Seamons v. Snow, 84 F.3d 1226, 1238 (10th Cir.1996). However, “the plaintiff need not show that the specific action at issue has previously been held unlawful, he need only show that the alleged unlawfulness was apparent in light of preexisting law.” Id. (internal citations and quotations omitted).
This circuit has stated that the relevant test for qualified immunity is whether “the right was sufficiently clear that a reasonable government officer in the defendant’s shoes would understand that what he or she did violated that right.” Casey v. West Las Vegas Indep. Sch. Dist., 473 F.3d 1323, 1327 (10th Cir.2007) (emphasis added); see also Gomes v. Wood, 451 F.3d 1122, 1134 (10th Cir.2006) (“The law is clearly established if a reasonable official in the defendant’s circumstances would understand that her conduct violated the plaintiffs constitutional right.”). To determine what a reasonable person in Huff’s shoes would have thought about the legality of his decision to demote Poindexter, we may not inquire into Huffs knowledge of the law. See Halperin v. Kissinger, 807 F.2d 180, 186 (D.C.Cir.1986). We may, however, inquire into what someone in Huffs position would reasonably understand the facts to be regarding the nature of Poindexter’s position. Cf. id. (noting that the Supreme Court precluded inquiries into a defendant’s knowledge of the law, but did not “eliminate inquiry into intent unrelated to knowledge of the law”). In this case, Huffs testimony indicates that someone in his position would understand the nature of the Road Foreman position well enough to know whether the job required political loyalty. See Jantzen, 188 F.3d at 1259 (declining defendant’s request for qualified immunity and relying, “most importantly, [on] the fact the Defendant Hawkins himself knew and had empirical evidence that the lack of political loyalty by [the plaintiffs] did not interfere with the effective performance of [plaintiffs’] jobs”). And, if the jury chooses to believe the defendant Huffs own testimony on this matter, they could conclude that it was clearly established that the job of Road Foreman was not a politically sensitive position. Until the jury determines that factual question, therefore, Huff is not entitled to qualified immunity as a matter of summary judgment. See Roska ex rel. Roska v. Peterson, 328 F.3d 1230, 1251 (10th Cir.2003) (“The objective legal reasonableness of the officer’s actions is a legal question. But where the historical facts material to [that] issue are in dispute *931 [there] ... [is] an issue for the jury.”) (internal citations and quotations omitted).

Speech Claim

Given the heightened protection supplied to employee speech, a court should be especially reluctant to grant qualified immunity for a demotion in retaliation for constitutionally protected speech. See Aiken v. Rio Arriba Bd. of County Comm’rs, 134 F.Supp.2d 1216, 1223-24 (D.N.M.2000) (granting an employer qualified immunity for firing an employee based on his political speech because, at the time of the firing, the Tenth Circuit had not yet made it clear that the stricter Pickering analysis applied to cases involving an employee’s political speech, and under the looser standards afforded in the context of political affiliation claims, the firing would have been justified); see also Bass v. Richards, 308 F.3d 1081, 1089 (10th Cir.2002) (“The citizenry’s ability to make known their assessment of a candidate’s qualifications for public office is integral to the operation of the system of government established by our Constitution. Accordingly, [t]he First Amendment affords the broadest protection to such political expression.”) (internal citations and quotations omitted).
Qualified immunity is not appropriate in this case under the speech claim because, applying the four-prong Pickering test, there is substantial evidence that Huffs decision to fire Poindexter violated clearly established law. First, Poindexter has asserted that he was fired in retaliation for his statements in support of incumbent Commissioner Harrell. Statements in support of political candidates are firmly within the sphere of matters of “public concern.” See Bass, 308 F.3d at 1089. Second, the district court found that Poin-dexter’s interest in his speech in support of Harrell outweighed any interest Huff may have had in preventing that speech. Huff does not contest that finding on appeal. Third, as discussed above, Poindex-ter has alleged more than enough facts to support his claim that his speech caused his demotion. Finally, Huff has not established that he would have demoted Poindexter even if Poindexter had not stated his support for Harrell. Therefore, Huff is not entitled to qualified immunity on the speech claim.

Conclusion

Based on the foregoing, I respectfully dissent and find that this court should REVERSE the district court’s grant of summary judgment on both the political association and free speech claims, and REVERSE the district court’s grant of qualified immunity to Defendant Huff. The court should REMAND the case for further proceedings in light of the forgoing comments.

. The parties agree, in their briefs, that Poin-dexter announced his own candidacy for County Commissioner before his November 2005 conversation with Huff. Under normal circumstances, this might defeat an inference of causation based on the proximity of Poin-dexter's earlier statement in support of Harrell and Huff's decision to hire Watts. See Maestas, 416 F.3d at 1189 (10th Cir.2005) (stating that "evidence of intervening events tend to undermine any inference of retaliatory motive and weaken[s] the causal link” between the political speech and plaintiff’s subsequent transfer) (citing Gubitosi v. Kapica, 154 F.3d 30, 33 (2d Cir.1998)). And Huff would not have violated Poindexter’s constitutional rights if he demoted Poindexter for running against him in the race for County Commissioner. See Jantzen v. Hawkins, 188 F.3d 1247, 1252 (10th Cir.1999) (rejecting plaintiff's claim of wrongful discharge in violation of his right to association under the First Amendment in part because plaintiff’s claim was based on his boss’s displeasure with his own candidacy. "The right to political affiliation does not encompass the mere right to affiliate with oneself.”). In this case, however, the defendant explicitly stated that he had not demoted the plaintiff because of his rival candidacy for County Commissioner. Construing all facts in the light most favorable to the plaintiff, I believe we must conclude that this intervening cause did not create a new reason for the defendant to demote the plaintiff, and a jury could still find that the plaintiff was demoted because of his constitutionally protected affiliation with, and speech for, Harrell.

. The lapse of lime between the July 2005 conversation where Poindexter indicated his support for Harrell and the November 2005 conversation where Poindexter claims Huff indicated he would hire Watts is greater than the time lapse that our cases have previously found as probative of causation. See, e.g., Ramirez v. Oklahoma Dept. of Mental Health, 41 F.3d 584, 595-96 (10th Cir.1994) (overruled on other grounds by Ellis v. Univ. of Kansas Med. Ctr., 163 F.3d 1186 (10th Cir.1998)) (holding that a claim for retaliatory discharge could survive summary judgment in large part because of plaintiff’s allegation that he was fired just one and half months after defendants were made aware of the defendant’s critical, but constitutionally protected, speech). The proximity is, nonetheless, probative in this case for two reasons. First, Huff lacked the authority to immediately demote Poindexter, but he demoted Poindexter as soon as he was given that authority. Second, if the jury believes Poindexter’s version of the November 2005 conversation, the jury could also conclude that Huff decided to hire Watts sometime significantly before that conversation. In that case, the proximity between Poindexter’s statement in support of Harrell and Huff’s decision to hire Watts is close enough that the jury may infer a causal connection between those two events.

. I also find it persuasive that a district judge addressing a similar claim in Oklahoma concluded that "there [wa]s a genuine issue of material fact as to whether [the Road Foreman position] required political allegiance.” Lunsford v. Board of County Comm’rs of County of Rogers, 2006 WL 2679578 at *4 (N.D.Okla.2006).

. Huffs description of the nature of the Road Foreman position is particularly significant because he may have expected different things from his Road Foreman than had prior commissioners. See Hoard v. Sizemore, 198 F.3d 205, 213 (6th Cir.1999) (noting that, in determining whether a position requires political allegiance, it is important to inquire into "how the new office holder envisions the position”).

. The Commissioner’s job included, among other things, approving payroll, "selling or purchasing public land or buildings for the county,” making "general financial plans for the county,” organizing "solid waste management,” and serving as a member of "the governing body of the courthouse.” [R. at 314] I know of no evidence suggesting that Poindexter was ever involved in any of these matters.

. Unlike the determination of the political sensitivity of a job, which will normally raise factual questions appropriate for a jury, the first two prongs of the Pickering analysis can generally be decided by the judge. See Clinger v. New Mexico Highlands Univ., Bd. of Regents, 215 F.3d 1162, 1166 (10th Cir.2000) (stating that the first two prongs of the Pickering analysis raise questions that "are legal in nature and must be resolved by the court”).