**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1610
_____

JEFFREY J. HEFFERNAN,

Appellant

v.

CITY OF PATERSON;
MAYOR JOSE TERRES;
POLICE CHIEF JAMES WITTIG;
POLICE DIRECTOR MICHAEL WALKER
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-06-cv-03882)
District Judge: Honorable Kevin McNulty
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 11, 2014
_____

Before: VANASKIE, GREENBERG, and COWEN, *Circuit Judges*

(Filed: January 22, 2015)

Alexandra M. Antoniou, Esq.
Mark B. Frost, Esq.
Ryan M. Lockman, Esq.
Emily K. Murbarger, Esq.
Mark B. Frost & Associates
7 North Christopher Columbus Boulevard
Pier 5 at Penn's Landing, 2nd Floor
Philadelphia, PA 19106
        *Counsel for Appellant*

Victor A. Afanador, Esq.
Lite, De Palma, Greenberg
Two Gateway Center
12th Floor
Newark, NJ 07102
    *Counsel for Appellees City of Paterson & Michael Walker*

Susana Cruz-Hodge, Esq.
Lite, De Palma, Greenberg
Suite 1201
Two Gateway Center
12th Floor
Newark, NJ 07102
        *Counsel for Appellee City of Paterson*

Albert C. Lisbona, Esq.
Dwyer, Connell & Lisbona
100 Passaic Avenue
Third Floor
Fairfield, NJ 07004
        *Counsel for Appellee Jose Torres*

Gary Potters, Esq.
Potters & Della Peitra
100 Passaic Avenue
Fairfield, NJ 07004
        *Counsel for Appellee Jose Torres*

Anthony V. D'Elia, Esq.
Mitzy R. Galis-Menendez, Esq.
Roosevelt Jean, Esq.
Chasan, Leyner & Lamparello
300 Harmon Meadow Boulevard
6th Floor
Secaucus, NJ 07094

Thomas P. Scrivo, Esq.
McElroy, Deutsch, Mulvaney & Carpenter
100 Mulberry Street
Three Gateway Center
Newark, NJ 07102
        *Counsel for Appellee James Witting*

_____

OPINION
_____

VANASKIE, *Circuit Judge*.

Appellant Jeffrey Heffernan, a police officer in Paterson, New Jersey, was demoted after being observed obtaining a local mayoral candidate's campaign sign at the request of his mother. He brought this action under 42 U.S.C. § 1983 against Appellees, including the City of Paterson, then-Mayor Jose Torres, Police Chief James Wittig, and

3

Police Administrator Michael Walker, for unconstitutional retaliation under the First Amendment. Heffernan now appeals from the District Court's grant of summary judgment in favor of Appellees. Because Heffernan has failed to come forward with evidence that he actually exercised his First Amendment rights, and because claims of retaliation based only on the perceived exercise of those rights are foreclosed by *Fogarty v. Boles*, 121 F.3d 886, 888 (3d Cir. 1997), we will affirm the District Court's order.

## I.

Heffernan joined the Paterson Police Department in 1985, and received various commendations for his police work over the next 20 years. In late 2005, he was promoted to detective and assigned to an administrative detail in the office of the Chief of Police. The events giving rise to this case occurred in April 2006, at a time when Lawrence Spagnola, a former Paterson police chief and close friend of Heffernan's, was pursuing a bid to unseat the then-incumbent mayor, Jose Torres. Heffernan, despite personally hoping that Spagnola would win the election, was unable to vote for Spagnola based on his city of residence, did not "work[] on" the campaign, (App. 2089), and did not consider himself "politically involved" with the campaign, (App. 486).

On April 13, 2006, Heffernan's bedridden mother asked Heffernan to drive into downtown Paterson to pick up a large Spagnola campaign sign, to replace a smaller one that had been stolen from her lawn. That same day, Heffernan contacted Spagnola's campaign manager to arrange a time and place when he could pick up a lawn sign. He then drove into Paterson, picked up the lawn sign from a distribution point at which Spagnola supporters and campaign staff were

4

present, and brought the sign to his mother's house, where he left it for another family member to erect.

A Paterson police officer assigned to the security staff of Mayor Torres—Spagnola's opponent—observed Heffernan's brief encounter with the Spagnola campaign manager. Word spread quickly, and the next day, one of Heffernan's supervisors confronted him about his interaction with Spagnola's campaign staff. Heffernan protested that he "wasn't politically involved[,]" and was "just picking up a sign for [his] mom." (App. 486–87.) Nonetheless, Heffernan was immediately demoted to a "walking post" because of his "overt[] involvement in a political election." (App. 217.)

In August 2006, Heffernan filed this § 1983 action in the District of New Jersey, seeking compensatory and punitive damages based on Appellees' alleged First Amendment violations. Although the precise nature of the claims articulated in Heffernan's complaint was the source of lengthy debate before the District Court, neither party appeals from that Court's most recent conclusion that the complaint states claims for (1) retaliatory demotion based on Heffernan's exercise of the right to freedom of speech, and (2) retaliatory demotion based on his exercise of the right to freedom of association.

The parties filed cross-motions for summary judgment. Judge Sheridan, who was originally assigned to this matter, denied both motions without permitting the filing of briefs in opposition. For reasons that are not entirely clear, Heffernan proceeded to trial on only his free-association claim, which resulted in a jury verdict of $105,000 in his favor. After trial, however, Judge Sheridan retroactively recused himself based

on what he concluded was a conflict of interest and vacated the jury's verdict.

The case was reassigned to Judge Cavanaugh, who revisited the parties' motions for summary judgment but, like Judge Sheridan, did not allow briefing beyond the original filings. He then granted summary judgment for Appellees on the free-expression claim, but entirely failed to address the free-association claim—i.e., the claim on which the jury had returned a verdict in Heffernan's favor. On appeal, a panel of this Court concluded that the District Court had erred by granting summary judgment without permitting the parties to file briefs in opposition, and by failing to consider the viability of Heffernan's free-association claim. 492 F. App'x 225 (3d Cir. 2012).

On remand, the case was reassigned yet again, this time to Judge McNulty, who permitted a full round of fresh briefing on the parties' cross-motions for summary judgment. In an opinion filed on March 5, 2014, Judge McNulty concluded that Heffernan had adequately pleaded and prosecuted his free-association claim. He nonetheless found that Heffernan had failed to produce evidence that he actually exercised his First Amendment rights, and in the alternative, Heffernan was foreclosed from seeking compensation under § 1983 for retaliation based only on the perceived exercise of those rights. Accordingly, Judge McNulty granted summary judgment in favor of Appellees on all counts. Heffernan filed a timely notice of appeal.

## II.

The District Court had jurisdiction over this case under 28 U.S.C. §§ 1331 and 1343. We have appellate jurisdiction

under 28 U.S.C. § 1291. Our review of the District Court's order granting summary judgment is plenary. *Trinity Indus., Inc. v. Chi. Bridge & Iron Co*., 735 F.3d 131, 134 (3d Cir. 2013). Summary judgment is appropriate where the movant establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the evidence "'in the light most favorable to the nonmoving party.'" *Trinity Indus., Inc*., 735 F.3d at 134–35 (quoting *Kurns v. A.W. Chesterton Inc*., 620 F.3d 392, 395 (3d Cir. 2010)).

## III.

The First Amendment generally prohibits a public employer from disciplining, demoting, or firing an employee based on that employee's exercise of First Amendment rights, including speaking out on a matter of public concern or engaging in expressive conduct to the same effect, *see Fogarty*, 121 F.3d at 888, or associating with a particular political party, *see Goodman v. Pa. Turnpike*, 293 F.3d 655, 663–64 (3d Cir. 2002) (citing *Rutan v. Rep. Party of Ill.*, 497 U.S. 62, 75 (1990)).[1] This appeal raises three issues: (1) whether the District Court erred by considering Appellees' motion for summary judgment on Heffernan's free-association claim; (2) whether the record contains evidence upon which a jury could find that Heffernan actually

[1] The primary exceptions, not relevant here, are where the government's concern "with the effective and efficient fulfillment of its responsibilities to the public" outweighs the employee's free-speech rights, *Fogarty*, 121 F.3d at 888, or where "party affiliation is an appropriate requirement for the position involved," *Goodman*, 293 F.3d at 663.

exercised his free-speech or free-association rights when he picked up a political sign as a favor for his mother; and (3) whether Heffernan nonetheless may obtain relief for the violation of a constitutional right under § 1983 even where he did *not* exercise any First Amendment right, but his employer mistakenly believed he did.

## A.

Heffernan first argues that the District Court should not have considered Appellees' motion for summary judgment on his free-association claim, and should instead have allowed that claim to proceed to trial without further scrutiny. In support of this unusual proposition, he notes that a jury already returned a verdict—albeit one vacated on procedural grounds—in his favor. Therefore, according to Heffernan, the free-association claim must have had sufficient factual support to permit that verdict.

Heffernan believes we acknowledged as much in our previous opinion in this case. There, we ordered that on remand, the District Court, along with deciding whether Heffernan had adequately "pleaded and prosecuted" his free-association claim, "should also consider the appropriate remedy, whether it be dismissal of the Free Association claim, reopening discovery solely on Free Association, or proceeding to trial." 492 F. App'x at 230. The lack of a reference to summary judgment, in Heffernan's view, bolsters his argument that the District Court erred by considering Appellees' motion as to the free-association claim.

This is a misreading of our opinion. On the previous appeal, it was apparent that the District Court had made two reversible errors. First, the Court granted summary judgment

for Appellees on Heffernan's free-speech claim without permitting Heffernan to file a brief in opposition; second, the Court's opinion made no reference whatsoever to Heffernan's still-pending free-association claim. As a result, we ordered the District Court "to permit the parties to re-file their summary judgment motions with updated statements of undisputed material fact and to allow opposition and reply briefing." *Id.* at 229. The portion of the opinion on which Heffernan relies simply directed the District Court to consider Appellees' argument that Heffernan had not adequately pleaded or prosecuted his free-association claim—which to that point had been overlooked in the case's complicated procedural history. In sum, our disposition of that appeal had no bearing on Appellees' right to contest the sufficiency of Heffernan's evidence on his free-association claim through a motion under Rule 56 for summary judgment.

Moreover, Appellees filed a timely motion under Rule 56 even before the first trial in this case. They did not receive the benefit of a procedurally sound ruling on that motion until it was considered by the District Court in the opinion that is the subject of this appeal. We thus reject Heffernan's argument that the District Court improperly considered the merits of Appellees' motion for summary judgment on his free-association claim.

B.

We next address whether the District Court properly granted summary judgment on Heffernan's free-speech and free-association claims insofar as they are predicated on the allegation that he suffered retaliation for actually engaging in speech or conduct protected under the First Amendment.

9

First, with respect to his free-speech claim, Heffernan must establish that: "(1) [he] spoke on a matter of public concern; (2) [his] interest in that field outweighs the government's concern with the effective and efficient fulfillment of its responsibilities to the public; (3) the speech caused the retaliation; and (4) the adverse employment decision would not have occurred but for the speech." *Fogarty*, 121 F.3d at 888 (citing *Green v. Phila. Housing Auth.*, 105 F.3d 882, 885 (3d Cir. 1997)). Here, the only element in dispute is the first—i.e., whether a jury could find that Heffernan actually spoke on a matter of public concern. We note that Heffernan need not prove he communicated a message *verbally*—and indeed, the record is devoid of such evidence—because expressive conduct also is protected under the First Amendment. Such conduct exists where "an intent to convey a particularized message was present, and the likelihood was great that the message would be understood by those who viewed it." *Texas v. Johnson*, 491 U.S. 397, 404 (1989). "[T]his is a fact-sensitive, context-dependent inquiry, and . . . the putative speaker bears the burden of proving that his or her conduct is expressive." *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 161 (3d Cir. 2002) (citations and quotation marks omitted).

Heffernan's best argument here is that his actions had the *effect* of assisting Spagnola's campaign, and indeed, Torres's supporters construed his conduct as an expression of direct personal support for the campaign. But, as recognized by the District Court, this is only half the picture. Heffernan repeatedly disavowed anything resembling "an intent to convey a particularized message." For instance, at deposition, he denied "working on" Spagnola's campaign, (App. 2089), being "politically involved" with the campaign,

10

(App. 486), or even "supporting [Spagnola] for mayor" at all, (App. 191). Instead, in his own description of the incident to a friend, "I was picking up a sign for my mother, and that's all I was doing." (App. 483.) In light of this unambiguous testimony, no room exists for a jury to find that Heffernan intended to convey a political message when he picked up the sign at issue. The District Court thus properly granted summary judgment on Heffernan's claim of retaliation based on the actual exercise of his free-speech rights.

Nor does Heffernan fare better on his free-association claim, which requires proof "(1) that the employee works for a public agency in a position that does not require a political affiliation, (2) that the employee maintained an affiliation with a political party, and (3) that the employee's political affiliation was a substantial or motivating factor in the adverse employment decision." *Goodman*, 293 F.3d at 663–64 (citations and quotation marks omitted). The first and third elements are plainly established on the record before us. With respect to the second element, Heffernan maintains that his close friendship with Spagnola, his passive desire to see Spagnola win the election, and the belief of Spagnola's campaign manager that Heffernan was a "supporter" of the campaign, (App. 391), taken together, are sufficient to prove that he "maintained an association" with the Spagnola campaign.

For the same reasons described above, however, we conclude that Heffernan has failed to raise a genuine dispute of material fact on this point. Heffernan himself confirmed that regardless of what others may have perceived, he did not have any affiliation with the campaign other than the cursory contact necessary for him to pick up the sign for his mother. Consequently, the record is insufficient to allow a jury to

11

return a verdict in Heffernan's favor on his claim of retaliation based on the actual exercise of his right to freedom of association. We will affirm the District Court's grant of summary judgment with respect to Heffernan's claim of retaliation based on the actual exercise of his free-association rights.

C.

In the alternative, Heffernan argues that he is entitled to proceed to trial on both claims under a "perceived-support" theory, i.e., where the employer's retaliation is traceable to a genuine but incorrect or unfounded belief that the employee exercised a First Amendment right. In other words, Heffernan asks us to eliminate a traditional element of a First Amendment retaliation claim—namely, the requirement that the plaintiff in fact exercised a First Amendment right.

That argument is squarely foreclosed by our own binding precedent, which holds that a free-speech retaliation claim is actionable under § 1983 only where the adverse action at issue was prompted by an employee's actual, rather than perceived, exercise of constitutional rights. *See Ambrose v. Twp. of Robinson*, 303 F.3d 488, 496 (3d Cir. 2002); *Fogarty*, 121 F.3d at 891. All of our sister circuits to consider this issue in the context of a free-speech claim have reached the same conclusion. *See Wasson v. Sonoma Cnty. Junior Coll.*, 203 F.3d 659, 662 (9th Cir. 2000); *Jones v. Collins*, 132 F.3d 1048, 1054 (5th Cir. 1998); *Barkoo v. Melby*, 901 F.2d 613, 619 (7th Cir. 1990). Because Heffernan provides no convincing reason to distinguish these cases, the District Court correctly denied Heffernan's alternative basis for relief with respect to his free-speech claim.

Heffernan's last contention is that *Ambrose* and *Fogarty*, each of which addressed free-speech claims, leave room for us to conclude that he may seek relief under § 1983 on a perceived free-*association* claim. By way of example, he directs us to *Dye v. Office of the Racing Comm'n*, 702 F.3d 286 (6th Cir. 2012), in which the Sixth Circuit addressed the employee-plaintiffs' claim of workplace retaliation based on their supposed affiliation with the Republican Party. There, the panel concluded that the employer's mere assumption of an affiliation, whether founded or not, was sufficient for the plaintiffs' claim to proceed. *Id.* at 299–300.

To begin with, we have no reason to believe that the holding of *Dye* can be reconciled with *Ambrose* and *Fogarty*—and nor did the Sixth Circuit. *See id.* at 300 ("[W]e find the Third Circuit's conclusion [in *Ambrose*] unpersuasive."). But beyond that, we are not convinced that *Dye* provides any reason to depart from our established holding on this point. Most notably, the *Dye* panel suggested it was "adopt[ing] the reasoning" of the First and Tenth Circuits in *Welch v. Ciampa*, 542 F.3d 927, 939 (1st Cir. 2008), and *Gann v. Cline*, 519 F.3d 1090, 1094 (10th Cir. 2008), both of which involved adverse employment actions taken against employees who did *not* adopt a position on a local political issue. *Dye,* 702 F.3d at 300. Like the District Court, however, we read *Welch* and *Gann* as natural applications of the settled First Amendment principle that an employer may not discipline an employee based on the decision to remain politically neutral or silent. *See Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 272–73 (3d Cir. 2007). And indeed, the emphasis on that point in *Welch* and *Gann* is, if anything, consistent with the admonition in *Ambrose* and *Fogarty* that a First Amendment retaliation

13

claim under § 1983 must rest upon the actual exercise of a particular constitutional right—whether it be the right to speak on a political issue, to associate with a particular party, or to not speak or associate with respect to political matters at all.

Heffernan, however, has not presented evidence that he was retaliated against for taking a stand of calculated neutrality. Instead, he argues that Appellees demoted him on a factually incorrect basis. But it is not "a violation of the Constitution for a government employer to [discipline] an employee based upon substantively incorrect information," *Waters v. Churchill*, 511 U.S. 661, 679 (1994), even where the government employer erroneously believes that the employee had engaged in protected activity under the First Amendment. To paraphrase our colleague, Judge Roth, "a [First Amendment] claim depends on [First Amendment protected conduct], and there was none in this case." *Pro v. Donatucci*, 81 F.3d 1283, 1292 (3d Cir. 1996) (Roth, J., dissenting). Accordingly, we will affirm the District Court's grant of summary judgment with respect to Heffernan's claims insofar as they are based on a "perceived-support" theory of recovery.

## IV.

For the foregoing reasons, we will affirm the District Court's order of March 5, 2014 granting summary judgment in favor of Appellees.